## QUITCLAIM DEED

I, Frank M. Giglio, of Charlestown, Massachusetts, for consideration paid, and in full consideration of One Dollar ($1.00) and other valuable consideration, grant to the United States of America with QUITCLAIM COVENANTS, a certain parcel of land situated on 4 Stonewood Lane, West Tisbury, MA 02575 with the buildings thereon situated, and being bounded and described as follows:

A deed from Paul A. Adler, Trustee of STONEWOOD REALTY TRUST under Declaration of Trust dated February 19, 1981 to Frank M. Giglio dated April 22, 1988, and recorded in the Dukes County Registry of Deeds at Book 381, Page 427 as amended by documents recorded in Book 400 at pages 637 through 639, of RFD Box 422A, Chilmark, County of Dukes;

A certain parcel of land situated in West Tisbury, County of Dukes County, Commonwealth of Massachusetts, being Lot No. 4 on a Plan entitled "Quansoo Ridge". A Plan of land in West Tisbury, Mass. Prepared for Stonewood Realty Trust Scale 1" - 60' June 16, 1986 Smith & Dowling Engineers, Surveyors, Planners State Road, Post Office Box 1087 Vineyard Haven, Mass. 02568 recorded with Dukes County Registry of Deeds in West Tisbury Case File No. 335, to which plan reference is hereby made for a more particular description thereof.

The premises are conveyed together with the right to use Stonewood Lane as shown on said plan for all purposes, including utilities, for which streets and ways are used in the Town of Tisbury, in common with all those lawfully entitled thereto.

The premises are conveyed subject to and with the benefit of easements and restrictions of record including those contained in Declaration of Restrictive Covenants dated April 23, 1987, recorded with the Dukes County Registry of Deeds in Book 447 at Page 067.

*/s/ Frank M. Giglio*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

Before me personally appeared Frank M. Giglio and acknowledged the foregoing to be his free act and deed.

_____
NOTARY PUBLIC
My Commission Expires: 7/9/2010

**ESCROW AGREEMENT**

ESCROW AGREEMENT entered into this 14th day of January, 2005, among Frank M. Giglio(herein "Surety"), Michael J. Sullivan, in his official capacity as United States Attorney for the District of Massachusetts (herein "United States Attorney"), and Tony Anastas, in his official capacity as Clerk of the United States District Court for the District of Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of Frank M. Giglio(herein "Defendant") in Criminal No. 03-10370-DPW, on the terms and conditions of bail set forth in an Order Setting Conditions of Release (herein "Bail Order") dated _January 6, 2005_, and entered by the Honorable Magistrate Judge Robert Collings, and has agreed to execute a personal bond in the amount of _One Hundred Thousand_ dollars ($ 100,000 ) Dollars (herein "Personal Bond") to secure the Defendant's compliance with the terms and conditions of the Bail Order.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1. The Surety shall execute a quitclaim deed to the parcel of real property located at 4 Stonewood Lane, West Tisbury, MA 02575 in favor of the United States of America, and deliver said deed to the Escrow Agent to be held in escrow pursuant to the terms of this Agreement.

2. The Surety further agrees to execute any additional documents and take any action necessary to effectuate the transfer of said parcel of real property and facilitate the sale of such property in the event that the Defendant is in default of the terms and conditions of the Bail Order or Personal Bond.

3. The Escrow Agent shall hold the quitclaim deed in escrow under the following terms and conditions:

A. In the event that the Defendant fails to appear as required at all proceedings in Criminal No. 03-10370-DPW or otherwise violates any condition of bail, and Defendant is declared to be in default by a judicial officer of the United States District Court for the District of Massachusetts, then, upon order of the Court, and in lieu of or in addition to foreclosure proceedings on any mortgage granted by the Surety, the Escrow Agent shall tender the quitclaim deed to the United States Attorney, and he shall cause the same to be immediately recorded without notice to the Surety. Any requirement that foreclosure proceedings be commenced upon any mortgage granted by the Surety in connection with Criminal No. 03-10370-DPW is expressly waived by the Surety.

B. This Agreement shall terminate upon the final disposition of Criminal No. 03-10370-DPW and written discharge of the bond provided to the Surety by the United States of America. Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed to the Surety.

5. The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

6. This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT: _____    SURETY: _____

TONY ANASTAS, CLERK OF COURT


By: _____

Deputy Clerk _____

MICHAEL J. SULLIVAN,
UNITED STATES ATTORNEY


By: _____
Asst. U.S. Attorney

**COMMONWEALTH OF MASSACHUSETTS**

SUFFOLK, SS
Then personally appeared Frank M. Giglio and acknowledged the foregoing to be his free act and deed before me.

_____
NOTARY PUBLIC

My Commission Expires: 7/7/2010

Copyright 2000 Vista
200503

# FISCAL YEAR 2005 REAL ESTATE TAX BILL

Miscellaneous Data

THIS FORM APPROVED BY THE COMMISSIONER OF REVENUE

Office Hours: Monday thru Friday
9:00am - 1:00pm

Send Payments To:
Collector of Taxes
Town of West Tisbury
P.O. Box 1029
Edgartown, MA 02539-1029

Make payments to the Town of West Tisbury. Please enclose the bottom section of this bill with your payment. If you would like a receipt, enclose the bottom section and the middle section (Taxpayer's Copy) of this bill and a self-addressed stamped envelope with your payment.

If your bill is paid by the bank that holds your mortgage, please send this bill to the bank immediately.

The Tax Collector's office is open from 9:00 to 1:00. The telephone number is 508-696-0104.
If you have any questions about your assessment or you wish to change your address, please call the Assessors' office at 508-696-0101.
See the back of this bill for additional details

Abatement applications to Assessors due: 2/01/2005

Collector of Taxes: Brent B. Taylor

---

THE COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE COLLECTOR OF TAXES

TOWN OF WEST TISBURY

**FISCAL YEAR 2005 REAL ESTATE TAX BILL**

| CLASS | 1 - RESIDENTIAL | 2 - OPEN SPACE | 3 - COMMERCIAL | 4 - INDUSTRIAL |
|---|---|---|---|---|
| TAX RATE PER $1000 | 4.52 | 4.52 | 4.52 | 4.52 |

Based on assessments as of January 1, 2004, your Real Estate Tax for the fiscal year beginning July 1, 2004 and ending June 30, 2005 on the parcel of Real Estate described below is as follows:

**TAXPAYER'S COPY**           3rd Quarter

See Reverse Side for Important Information

| PROPERTY IDENTIFICATION | REAL ESTATE VALUES | SPECIAL ASSESSMENTS | | |
|---|---|---|---|---|
| Id Codes | RESID 1     664100 | | Page/Line | Bill Number |
| 000034 000005 000003 | | | | 10889 |

Land Area  1.79 Acres

| | | | | |
|---|---|---|---|---|
| TOTAL VALUE RES/COMM EXEMPT | 664100 | | TOT TAX & SPEC. ASSESS. DUE | 3,001.73 |
| | | | PRELIMINARY TAX | 1,517.96 |
| | Tot.Taxable Valuation | 664100 | PRELIMINARY CREDITS | -1,517.96 |
| LOCATION | 4 STONEWOOD LN | TOT.SP.ASMTS | PRELIMINARY OUTSTANDING | |
| | | TOT. REAL ESTATE TAX | EXEMPTION: | |
| | | | 3RD PYMT DUE: 2/01/2005 | 741.89 |
| | | | 4TH PYMT DUE: 5/02/2005 | 741.88 |
| | | | CURRENT CREDITS | |
| | | | CURRENT OUTSTANDING BALANCE DUE | 741.89 |
| | | | DEMAND | |
| | | | INTEREST | 741.89 |
| | | | PAY THIS AMOUNT: | |

GIGLIO FRANK M
166 SYCAMORE ST APT 2
SOMERVILLE MA 02145

Interest at the rate of 14% per annum will accrue on overdue payments from the due date until payment is made.

⑃ 34800 2⑃  ⑃5010⁞⁞5621⑃  ⑃  0010889⑃ 2005



ISSUED BY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

LOAN POLICY OF TITLE INSURANCE

# Commonwealth

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest: _____ Secretary

By: _____ President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or materials; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2  PA 20
ALTA Loan Policy (10-17-92)
**Form 1191-1** Face Page

Valid Only If Schedules A and B and Cover Are Attached

secured by a purchase money mortgage given to the insured

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

Conditions and Stipulations Continued Inside Cover

COMMONWEALTH LAND TITLE
INSURANCE COMPANY
A RELIANCE GROUP HOLDINGS COMPANY
50 Federal Street
Boston, Massachusetts 02110
(617) 542-0800

MORTGAGEE'S POLICY OF TITLE INSURANCE

Policy No. 980255-BOS

File No. H-980255

## SCHEDULE A

Amount of Insurance:  $  120,000.00

Date of Policy:  February 27, 1998 at 9:30 A.M.

1. Name of Insured: Martha's Vineyard Co-Operative Bank, its successors and/or assigns as their interests may appear

2. The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is Fee Simple and is at Date of Policy vested in:

   Frank M. Giglio

3. The mortgage herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:

   Mortgage (adjustable rate loan) from Frank M. Giglio to Martha's Vineyard Co-Operative Bank in the original principal amount of $120,000.00, dated February 23, 1998, recorded with Dukes County Registry of Deeds in Book 722, Page 175.

4. The land referred to in this policy and described in the insured mortgage is situated in the County of Dukes, Town of Tisbury, Commonwealth of Massachusetts and is identified as follows:

   All that certain parcel of land with the buildings thereon situated on 4 Stonewood Lane (a/k/a Lot 4 South Road) in the Town of Tisbury, Dukes County, Commonwealth of Massachusetts, all more particularly described in the Mortgage insured in Item #3 of Schedule A.

Countersigned: _____
Haskell Shapiro, V.P.
N.E. States Counsel

Policy No. 980255-BOS

File No. 980255

SCHEDULE B-Part I

This policy does not insure against loss or damage by reason of the following:

1. Rights or claims of parties other than Insured or Mortgagor in actual possession of any or all of the property.

2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose.

3. Unfiled mechanics' or materialmen's liens.

   Exceptions numbered 1 and 3 above are hereby deleted.

4. Taxes assessed as of January 1, 1997, for the fiscal period beginning July 1, 1997, which are not yet due or payable, and for subsequent years.

   NOTE : This policy insures that taxes are paid through March 31, 1998.

5. Taxes assessed as of January 1, 1998, for the fiscal period beginning July 1, 1998, which are not yet due or payable, and for subsequent years.

6. Title to and rights of the public and others entitled thereto in and to those portions of the insured premises lying within the bounds of South Road and Stonewood Lane.

7. Such state of facts as is disclosed on plan entitled "Quansoo Ridge A Plan of Land in West Tisbury, Mass., prepared for Stonewood Realty TRust" dated June 16, 1986 by Smith & Dowling Engineers recorded with Dukes County Registry of Deeds win West Tisbury Case File No. 335.

8. Rights, easements and restrictions set forth in Declaration of Restrictive Covenants dated April 23, 1987 and recorded with said Deeds in Book 472, Page 67.

   NOTE: The above exceptions do not adversely affect the use and enjoyment of the mortgaged premises for single family residence purposes, as currently improved.

(etf)

Schedule B - Continued

Policy No.
980255-BOS

File No. 980255

END

NOTE: Unless Schedule B Part II is attached to the Loan Policy there are no subordinate matters that affect title to the estate or interest referred to in Schedule A.

NONE

COMMONWEALTH LAND TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

RESIDENTIAL MORTGAGE ENDORSEMENT
(Including SECONDARY MORTGAGE MARKET ENDORSEMENT)

Attached to and forming a part of Loan Policy Number   980255-BOS

This Endorsement is effective only if attached to a Loan Policy where the insured premises is, as of the Date of Policy, used exclusively for one-to-four family residential purposes.

The Company insures the owner of the indebtedness secured by the insured mortgage against actual loss or damage sustained by reason of any inaccuracies in the following assurances:

1. That the location of any easement and/or right of way referred to in Schedule B is ascertainable and fixed; and/or
   That the exercise of any rights pursuant to any easement and/or right of way referred to in Schedule B will not interfere with the use of the buildings and improvements presently located on the insured premises;
2. That there are no violations of any covenants, conditions or restrictions referred to in Schedule B, and that a future violation thereof will not cause a forfeiture or reversion of title or otherwise affect the lien of the mortgage insured;
3. That there are no discrepancies, conflicts in boundary lines, shortage in area, or other facts which an accurate survey would disclose relating to the land.

To the extent that they are checked, the following standard ALTA Endorsements are incorporated by reference as if they were attached to the policy:
```
   (   )      ALTA-4.1  - Condominium Endorsement
   ( X )      ALTA-6    - Variable Rate Mortgage Endorsement
   (   )      ALTA-6.2  - Negative Amortization Endorsement
   ( X )      ALTA-8.1  - Environmental Lien Endorsement
```

The total liability of the Company under said policy or certificate and under this and any prior endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said policy or certificate, as the same may be specifically amended in dollar amount by this or any prior endorsements, and the costs which the Company is obligated to pay under the Conditions and Stipulations of the Policy.

This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

IN WITNESS WHEREOF COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers on February 27, 1998.

CLTIC-BOSTON-1
Residential Mortgage
Endorsement

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Countersigned by _____
Haskell Shapiro, Vice President
and New England States Counsel

## 5. PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under the policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time of loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. LIMITATION OF LIABILITY.

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

## 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 4(a) of these Conditions and Stipulations.

## 10. LIABILITY NONCUMULATIVE.

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

## 11. PAYMENT OF LOSS.

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT.

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect of the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION.

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY.

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to: COMMONWEALTH LAND TITLE INSURANCE COMPANY 1700 Market Street, Philadelphia, PA 19103-3990.

NM2  PA 20
ALTA Loan Policy (10-17-92)  ORIGINAL

Valid Only If Face Page and Schedules A and B Are Attached