```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,      )
     Plaintiff,                )
                               )      CRIMINAL NO.
          v.                   )      03-10370-DPW
                               )
DOUGLAS BANNERMAN, et al.,     )
     Defendants.               )
```

MEMORANDUM AND ORDER
August 25, 2005

The defendants Douglas Bannerman[1] and Frank Giglio have separately moved to suppress evidence produced by wiretap orders entered by judges of this Court.  The motions have one issue in common, the contention that the affidavits submitted in support of the wiretap orders failed to demonstrate that in light of shortcomings to other investigative procedures wiretaps were necessary.  In addition, the defendant Giglio contends that the affidavits supporting the wiretaps naming him as an interceptee were not supported by probable cause as required by Title III.

**I.**

In enacting the wiretapping provisions of Title III, Congress demonstrated a "fundamental policy . . . strictly to limit the employment of those techniques of acquiring

---

[1] Although the clerk has been informed that the defendant Bannerman determined after the hearing on his motion to plead guilty, he has not yet done so.  Given that the motion of the defendant Giglio raises the same issue, I will dispose of both motions on the merits at this time.

information." Gelbard v. United States, 408 U.S. 41, 47 (1972). This policy reflected the dual purposes of "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." Id. at 48 (quoting S. Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968), reprinted in 1968 U.S.C.C.A.N. 2122, 2153)).  Thus, in enacting the legislation, Congress "evidenced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." United States v. Giordano, 416 U.S. 505, 515 (1974).  To ensure that wiretaps were not "routinely employed as the initial step in criminal investigation," id., Title III contained what has come to be known as the "necessity requirement," pursuant to which wiretap applications were required to provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).

The First Circuit has interpreted the necessity requirement "to mean that the statement should demonstrate that the government has made a 'reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to

means so intrusive as electronic'" surveillance.  United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003) (quoting United States v. Hoffman, 832 F.2d 1299, 1306-07 (1st Cir. 1987)).  Under that interpretation, "the district court must satisfy itself that the government has used normal techniques but it has encountered difficulties in penetrating a criminal enterprise or in gathering evidence -- to the point where (given the statutory preference for less intrusive techniques) wiretapping becomes reasonable."  United States v. Abou-Saada, 785 F.2d 1, 11 (1st Cir. 1986) (citations omitted), cert. denied, 477 U.S. 908 (1986).  In this connection, it is not required that the wiretap application provide "proof positive that, without electronic assistance, a promising investigation is up a blind alley," United States v. David, 940 F.2d 722, 729 (1st Cir. 1991), cert. denied, 502 U.S. 989 (1991), or that "other methods have been entirely unsuccessful."  Villarman-Oviedo, 325 F.3d at 9.  The "government need not demonstrate that it exhausted all investigative procedures" to satisfy the necessity requirement.  United States v. Santana, 342 F.3d 60, 65 (1st Cir. 2003); see also United States v. Lopez, 300 F.3d 46, 52 (1st Cir. 2002) ("the necessity requirement is not tantamount to an exhaustion requirement").  Rather, an application is sufficient if it shows "reasonable efforts to succeed without such assistance have been tried and failed, and that electronic surveillance seems a

suitable next step in a plausible progression."  David, 940 F.2d at 729.

When considering a motion to suppress evidence gathered via a wiretap based upon allegations having to do with the sufficiency of the application and underlying affidavit, the task for the reviewing court is to "examine[] the face of the affidavit and 'decide[] if the facts set forth in the application were minimally adequate to support the determination that was made.'"  Villarman-Oviedo, 325 F.3d at 9 (quoting United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989)).  As a result, "the sufficiency of the affidavit is to be upheld where the appellate court determines that the issuing court could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed," Lopez, 300 F.3d at 53 (internal quotation marks and citation omitted), a standard of review equally applicable in the present context.  Ashley, 876 F.2d at 1074.

Bearing this instruction in mind, I have examined the challenged affidavits from the perspective of the First Circuit's interpretation of the necessity requirement under 18 U.S.C. § 2518(1)(c), and I find, as a practical matter, that the difficulties in penetrating and in gathering evidence regarding the criminal enterprise described in the affidavits were sufficient to go to the next suitable step, that of electronic

surveillance.  While the defendants point to what they characterize as a less-than-vigorous investigative undertaking, I do not view the record here to be one of simply desultory and mechanical tapping on drums before reaching for electronic surveillance as an investigative instrument.  The record more than adequately supports the determination by the issuing judges that the government had met the necessity requirement.

The core affidavit submitted by Special Agent Brian Tomasetta ("Tomasetta") of the Drug Enforcement Administration adequately demonstrated that "other investigative procedures . . . reasonably appear to be unlikely to succeed if tried."  18 U.S.C. § 2518(1)(c).  Tomasetta offered credible, fact-specific, and detailed explanations regarding the unlikelihood of approaches that had already been utilized in the course of the investigation -- i.e., working with cooperating witnesses and confidential informants, attempted placement of undercover agents, physical surveillance, search warrants, and use of pen registers and trap and trace devices -- accomplishing the pending investigatory goals.  Tomasetta described having already "considered and rejected" the use of trash searches and explained the basis for his conclusion that the technique, even in those limited locations in which it was feasible, would not provide "sufficient information to satisfy the goals of the investigation."  Finally, Tomasetta articulated in clear terms,

albeit using somewhat generic language the defendants characterize as "boilerplate," why various other investigative tools (e.g., grand jury subpoenas and interviews of potential witnesses) would either thwart the investigation -- for example, by alerting the targets that they were under suspicion -- or were unlikely to bear fruit.

I find that the facts as set forth in the application and supporting affidavit were more than "minimally adequate" to support the decision to permit electronic surveillance. Accordingly, the motions to suppress cannot succeed on the issue of the necessity requirement.

## II.

The defendant Giglio presses a claim that because Tomasetta's affidavit failed to demonstrate either that Giglio was involved in criminal activity or that he would be intercepted communicating about the target offenses, the government did not demonstrate the requisite probable cause to intercept his communications. Giglio argues that in the absence of probable cause particularized to him, he should not have been named as a potential interceptee of the wiretap, and that all communications of his so intercepted, as well as the fruits thereof, must be suppressed.

### A.  General Principles

I commence the analysis of this argument with several basic

precepts. It is axiomatic that in order to obtain a wiretap pursuant to Title III, as when seeking a search warrant, the government must make a showing of probable cause. 18 U.S.C. § 2518(3)(a) (authorizing the issuance of an order approving electronic surveillance "if the judge determines on the basis of the facts submitted by the applicant that," <u>inter alia</u>, "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense"). "Probable cause exists when the affidavit demonstrates in some trustworthy fashion the likelihood that an offense has been or is being committed." <u>Santana</u>, 342 F.3d at 65 (citing <u>United States v. Vigeant</u>, 176 F.3d 565, 569 (1st Cir. 1999)). The Fourth Amendment requirement that "the place to be searched, and the persons or things to be seized," be specified is satisfied in the wiretap context "by identification of the telephone line to be tapped and the particular conversations to be seized." <u>United States v. Donovan</u>, 429 U.S. 413, 427 n.15 (1977). As a consequence, "[i]t is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named" in the wiretap application. <u>Id.</u>

The authority to intercept under Title III is not limited to "those conversations <u>between</u> a party named in the order and others," <u>United States v. Kahn</u>, 415 U.S. 143, 157 (1974) (emphasis in original), and the statute does not require

suppression of "legally intercepted conversations" on the targeted phone to which the named interceptee "was not himself a party." Id. at 158. However, "a wiretap application must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone." Id. at 428; see also 18 U.S.C. § 2518(4)(a) (requiring that each order authorizing or approving electronic surveillance specify "the identity of the person, if known, whose communications are to be intercepted").

### B. Application to Giglio

For present purposes, Giglio does not contest that the government had probable cause to believe Bannerman was committing drug-related offenses and that communications regarding them would be intercepted over telephone #3. Rather, Giglio's argument to suppress is as follows: (1) even if the government had probable cause as to Bannerman and telephone #3, it did not have probable cause with respect to Giglio; (2) without probable cause as to Giglio, the government should not have named him as a potential interceptee in the wiretap application; and (3) because of the lack of probable cause regarding Giglio, any communications by him that were intercepted via the wiretap, as well as the fruits of such communications, must be suppressed. After full review of the case law following the hearing on

Giglio's motion, I find his argument, even if correct as to proposition (1), founders at proposition (2).

Giglio's suppression argument depends upon the contention that the government must establish probable cause for each person named in a wiretap application. Several Circuit Courts, albeit not the First Circuit,[2] as well as numerous District Courts, including a judge in this District, have considered this contention and rejected it in reported decisions. See, e.g., United States v. Figueroa, 757 F.2d 466, 475 (2d Cir. 1985) (citing United States v. Tortorello, 480 F.2d 764, 775 (2d Cir. 1973), for the proposition that "the government need not establish probable cause as to all participants in a conversation. If probable cause has been shown as to one such participant, the statements of the other participants may be intercepted if pertinent to the investigation."); United States v. Domme, Jr., 753 F.2d 950, 954 n.2 (11th Cir. 1985) ("A wiretap application need not provide probable cause of criminal activity for each person named in an application . . . . What is required is sufficient information so that a judge could find probable cause to believe that the telephone in question is being used in an illegal operation.") (internal citations omitted); United States v. Martin, 599 F.2d 880, 884-85 (9th Cir. 1979) (rejecting

---

[2] The First Circuit has addressed the issue in a case that did not require it to rule on the contention. See Note 3 infra.

the proposition that 18 U.S.C. § 2518 "require[s] that only those for whom [] probable cause is shown may be named in the application" for a wiretap), overruled on other grounds by United States v. DeBright, 730 F.2d 1255 (9th Cir. 1984) (en banc); United States v. Lutcher, Criminal Action: 03-338 Section "I," 2004 U.S. Dist. LEXIS 10589, at *3-4 (D. La., Jun. 4, 2004) (holding that § 2518 does not require a showing of probable "with respect to each person named in the application"); United States v. Pappas, 298 F. Supp. 2d 250, 254 n.4 (D. Ct. 2004) ("the Government is not required to establish probable cause as to every named Interceptee in a wiretap application"); United States v. Trippe, 171 F. Supp. 2d 230, 235 (S.D.N.Y. 2001) (holding that "the issuing Judge was not required to find that there was probable cause that [the defendant] himself engaged in criminal activity to issue the warrant," and denying defendant's motion to suppress because the wiretap application "provided sufficient probable cause as to the other individuals named as interceptees"); United States v. Ambrosio, 898 F. Supp. 177, 183-85 (S.D.N.Y. 1995) (holding that "because the government is not required to show probable cause with respect to each interceptee," even if the government did not have probable cause to suspect the defendant of engaging in criminal activity, his motion to suppress fruits of a wiretap for which he was a named interceptee must be denied where a showing had been made that

"the conversations sought to be monitored were likely to contain evidence of a crime"); United States v. Marcy, 777 F. Supp. 1400, 1402 (N.D. Ill. 1991) ("The government need not establish probable cause with respect to each and every person named in a wiretap order."); United States v. Rodriguez, 606 F. Supp. 1363, 1370 (D. Mass. 1985) ("Probable cause need not be shown for each person named in an application so long as it is shown with respect to at least one individual.")

In the course of rejecting the argument that "where an interceptee is named and no probable cause exists any evidence obtained should be suppressed," Judge Caffrey reasoned that "[t]o require identification of persons for whom probable cause exists, yet punish for naming a person for whom it does not exist would be to force passage between Scylla and Charybdis." Rodriguez, 606 F. Supp. at 1370; see also Ambrosio, 898 F. Supp. at 184 (in denying motion to suppress wiretap evidence on the ground that the government lacked probable cause to name the defendant as an interceptee, stating that "[i]t would be anomalous to punish the government by suppressing the wiretap evidence for naming [the defendant] in the affidavit when it could constitutionally not have named him and still have intercepted his calls").[3]

---

[3] I do not find the First Circuit's decision in Santana to hold to the contrary, although taken out of context the language might admit of that suggestion given the posture of the appeal, where the issue apparently was not precisely framed and the proposition was assumed implicitly. In Santana, the defendant

11

The approach pressed by Giglio would do nothing to advance the competing policy goals Title III was designed to vitiate, namely "protecting individual privacy," while also "authoriz[ing] electronic surveillance as a weapon against the operations of organized crime," United States v. Kahn, 415 U.S. 143, 151 (1974).[4]  See, e.g., Rodriguez, 606 F. Supp. at 1370 (noting

---

moved to suppress evidence on the ground that the wiretap through which it was obtained violated Title III.  United States v. Santana, 342 F.3d 60, 65 (1st Cir. 2003).  Among the arguments advanced in support of the motion was that the government lacked probable cause to "identify Santana as involved in criminal activity and therefore had no right to identify Santana as an interceptee."  Id. at 65-66.  In deciding upon this prong of the argument, the District Court found that the "affidavit sufficiently presented facts showing probable cause" as to Santana.  United States v. Santana, 218 F. Supp. 2d 53, 56-57 (D. N.H. 2002).  The court, therefore, denied the motion to suppress "on the issue of the existence of probable cause."  Id. at 57.
     The District Court decision in Santana did not address the issue of whether probable cause was even necessary specifically with respect to Santana.  Nor did the First Circuit do so on appeal.
     In ruling upon the appeal, the First Circuit moved directly to de novo consideration of the determination by the District Court "that the facts in the affidavit constituted probable cause."  Santana, 342 F.3d at 64-65.  The Court concluded that the affidavit provided a "sufficient basis for the issuing judge to determine that Santana was committing, had committed, or was about to commit the listed drug-related crimes," and therefore affirmed the decision of the lower court.  Id. at 65.  In its analysis, the Court did not take up the question of whether probable cause for Santana was necessary in order to name him as an interceptee when probable cause had already been established both for another interceptee and the targeted phone line. Because the issue was not directly addressed in the appeal, Santana cannot be read to require the demonstration of probable cause as to every named interceptee.

     [4]In rejecting an argument that probable cause must be established as to all named interceptees, the Ninth Circuit outlined the relevant policy considerations:

12

that neither of these two objectives would be served by a statutory construction requiring probable cause as to each named interceptee); United States v. Milan-Colon, Nos. S2, S3 91CR.685, 1992 WL 236218, at *16 (S.D.N.Y., Sept. 8, 1992) (reasoning that "[a]ny over-inclusion in naming" potential interceptees, "far from establishing cause for suppression, furthers the statutory policy of preventing unreasonable invasions of privacy by ensuring that such persons will be given notice of the Title III order and any interception pursuant to 18 U.S.C. § 2518(8)(d)").

---

> [t]he policy of protecting persons from unreasonable invasions of privacy is furthered by naming in the application all those persons likely to have their conversations intercepted, whether or not probable cause exists as to them, because those persons will benefit from the mandatory statutory notice requirements. In cases where probable cause is doubtful as to some conversers, an investigative agency should be encouraged to name more, rather than fewer, persons in the application.
>
> In addition, the competing policy objective of aiding law enforcement would be frustrated if an investigative agency were required to make a showing of probable cause for every person named in the application. Under Donovan, the agency is required to name all persons for whom a showing of probable cause can be made. If the agency order can later be challenged on the ground that probable cause did not exist for one or more of the expected conversers, an impossible burden of exactness is imposed upon the agency in making a decision on which reasonable minds may differ. The policy behind the statute is best served by allowing latitude in naming an expected converser, even though probable cause as to that person ultimately may not be found.

United States v. Martin, 599 F.2d 880, 885 (9th Cir. 1979).

I do not find anything in United States v. Gonzalez, Inc., 412 F.3d 1102 (9th Cir. 2005), a recent case raised by the defendant at oral argument of this motion, to suggest the Ninth Circuit has retreated from this position.

There is, if anything, a practical benefit to being a named interceptee rather than having your communications intercepted without first being named in the application. Title III mandates that within ninety days of either the denial of an application for a surveillance order or the expiration of an issued surveillance order (including any extensions thereof), the court provide "persons named in the application" with "an inventory which shall include notice of -- (1) the fact of the entry of the order or the application; (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and (3) the fact that during the period wire, oral, or electronic communications were or were not intercepted." 18 U.S.C. § 2518(d). The statute provides that this inventory may also be given to "such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice" to notify. Id. Following an interceptee's receipt of this notice, the "judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice." Id. Thus, while named interceptees are guaranteed notice of the fact of any interception order and whether communications were intercepted thereto -- thereby enabling them immediately to seek leave to

review the intercepted communications, authorizing order, and surveillance application -- unnamed interceptees may or may not, depending upon the judge's discretion, receive such notice. Accordingly, named interceptees could be said to enjoy a greater level of protection vis-a-vis unnamed ones.

Upon reflection and review, I find the body of case law discussed above to be both persuasive and consistent with the underlying constitutional and policy concerns.  Because the wiretap application demonstrated probable cause with respect to both Bannerman and telephone #3, it satisfied the applicable constitutional and statutory requirements.  Having made a sufficient showing in this regard, the government was entitled to intercept pertinent communications on the targeted phone line between Bannerman and as yet unidentified third parties, as well as those with other named interceptees, including Giglio.

### III.

For the reasons set forth more fully above, the motions of defendants Bannerman and Giglio to suppress wiretap evidence are denied.

/S/ Douglas P. Woodlock

DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE