UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
       v.                           )      CRIMINAL NO. 03-10370-DPW
                                    )
FRANK GIGLIO                        )
_____)

### Giglio's Motion for Remedial Measures Regarding Jury Selection

Now comes the Defendant, by and through undersigned counsel, pursuant to the Jury Selection and Service Act, 28 U.S.C. §1861 et seq., as recently construed by the Honorable Nancy Gertner in <u>United States v. Green, (Crim No. 02-10301)</u>, and hereby moves the Court to implement the following procedure regarding the selection of a jury in the instant case: (1) for all summonses returned to the Court as "undeliverable," the same number of new summonses should be mailed to residents who live in the same zip code area as the undeliverable summonses targeted; (2) additional summonses should be sent in numbers equal to the amount of nonresponses in a given zip code area without determining whether the nonresponses are in fact undeliverables, and (3) stay the case, if necessary, until a jury can be assembled that comports with the JSSA.[1]

As grounds and reasons therefore, the defendant states the following:

1.  The JSSA imposes higher standards on public officials to supplement their source lists when necessary to "foster the policy and protect the rights" to a fair cross-section jury selection process. 28 U.S.C. § 1863(b)(2). In finding that those standards were violated in <u>Green</u>, Judge Gertner concluded that the decision to prosecute "street

---

[1]. It should be noted that the memorandum issued by Judge Gertner in the <u>Green</u> matter is only a draft opinion.

crime" in Federal courts reduces the available pool of African-American jurors from 20% in Suffolk County, where the defendants' alleged crimes took place in Green, to roughly 7% in the Eastern District of Massachusetts. Green Memorandum at 7. "Making matters even worse,", Judge Gertner found, "African-American representation plummets to roughly 3% or less in the Eastern Division jury pool after jury summonses are returned, at least in part because of outdated and inaccurate resident lists." Green Memorandum at 7-8. "As a result, the vast majority of Eastern District juries will not have a single African-American member." Green Memorandum at 8.

  2. While the Court in Green believed it was "obliged to deny [the defendants'] constitutional challenges," given the insurmountable burdens imposed by pertinent precedent, the Court found that the JSSA "sets the bar higher" and imposes "an affirmative obligation on districts to use jury selection processes that ensure random selection from a 'fair cross-section of the community.'" Green Memorandum at 9, quoting 28 U.S.C. § 1863(b)(2).

  3. The Court found "that the failure of the Federal Jury Administrator to supplement the existing flawed resident lists amounts to a statutory violation calling for remedial measures." Green Memorandum at 9.

  4. As part of those remedial measures, Judge Gertner ordered "that additional summonses be sent out in th[at] case for each summons that [was] returned as 'undeliverable,' signifying a bad address, as well as for each summons that is not responded to after a second mailing."

  5. Invoking the statutory remedy provided in §1867(d), as well as the Court's supervisory authority over jury selection, Judge Gertner instructed the federal Jury

Administrator to conduct a targeted second mailing of summonses to account for the numbers of undeliverables no matter where they occurred. Judge Gertner concluded that the remedy ordered, "geographically-targeted second-round mailing of summonses to compensate for specific undeliverables and nonresponses, does not require altering the Jury Plan at all, and thus does not present the prudential concerns faced by Chief Judge Young in Levasseur, 704 F. Supp. at 1164 n.9."

6.    The Court concluded that "[i]n light of the district court's failure to direct the federal Jury Administrator to supplement deficient resident lists, as is required by the JSSA, § 1863(b)(2), the jury selection of the defendants [would be] stayed pursuant to § 1867(d) until the measures described above [could be] implemented."

7.    The fact that the defendant is white in this case does not eradicate the prejudicial impact under-representation imposes upon the jury process. In describing the expansive impact under-representation happens upon the entire criminal justice system, Judge Gertner quoted Justice Marshall's opinion that "[w]hen any large and identifiable segment of the community is excluded . . . the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." Green Memorandum at 5, citing Peters v. Kiff, 407 U.S. 493, 503 (1972) (Marshall, J.). "The result," Judge Gertner concluded, "is not merely the appearance of bias; it may well be its reality."

Wherefore, the defendant respectfully moves that the instant motion be allowed.

RESPECTFULLY SUBMITTED,
BY HIS ATTORNEY,

*/s/ Martin G. Weinberg*
Mass. Bar No. 519480
OTERI, WEINBERG & LAWSON
20 Park Plaza, Suite 905
Boston MA 02116
(617) 227-3700

DATED: August 30, 2005