UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) | |
| v. | ) ) | Crim. No. 03-10370-DPW |
| FRANK GIGLIO | ) ) ) | |

**DEFENDANT FRANK GIGLIO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE PURSUANT TO FED. R. EVID. 404(B), 403 AND INCORPORATED MEMORANDUM OF LAW**

Now comes the defendant Frank Giglio and respectfully moves, pursuant to Fed. R. Evid. 404(b), 403, that this Honorable Court exclude from evidence at the trial of this case:

1. A recording, and the transcript thereof, of a conversation on September 15, 2004, between Giglio and Gary Milo, who was acting as an informant for the government during the recording of that conversation, as well as any and all testimony regarding the contents of that conversation;

2. Recordings, and the transcripts thereof, of any other conversations between Giglio and Milo relating to (1) Giglio's possible future involvement in a marijuana transaction with Milo, (2) Giglio's statements which are consistent with his having had marijuana dealings with his own customers in 2004, or (3) Giglio's statements which are consistent with prior involvement in marijuana dealing, as well as any and all testimony regarding the contents of those conversations.

3. A small, personal use quantity of marijuana found at Giglio's home at the time of his arrest.

As reason therefor, Giglio refers the Court to the Memorandum of Law incorporated herein.

**REQUEST FOR ORAL ARGUMENT**

Defendant Giglio requests oral argument on the within motion.

**LOCAL RULE 7.1(A)(2) STATEMENT**

The undersigned counsel has conferred with Rachel Hershfang, AUSA, and she opposes the granting of this motion.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION.**

Giglio was charged in a superceding indictment with membership in a finite, closed-ended conspiracy, alleged to have begun in January, 2003, which corresponds to the date of what the government believes to have been a delivery of marijuana to Massachusetts, and to have ended on December 1, 2003, a date which corresponds to a November 20, 2003, marijuana seizure in Iowa. Despite a year of intensive investigation, which included months of electronic surveillance of telephones used by two of the primary targets of the investigation, the government failed to develop sufficient evidence against Giglio to charge him with membership in this conspiracy in the initial indictment in this case. One of the individuals whom the government *did* uncover sufficient evidence to indict was Gary Milo. Milo began to cooperate with the government in December, 2003.

Not content with the numerous defendants which it had indicted, and despite its almost entirely unproductive investigation of Giglio, a businessman who operates a successful antiques co-op in Cambridge, Massachusetts, as well as his own antiques business, the government focused Milo on Giglio. Milo's marching orders were two-fold: (1) to entice Giglio into a future marijuana transaction, and (2) to lead Giglio to discuss his prior involvement in marijuana dealings. In the first, Milo was ultimately unsuccessful. In the second, he did enjoy some success, predominantly in a conversation which Milo recorded when the two men met at a restaurant on September 15, 2004.

This motion seeks to exclude any and all evidence regarding that conversation from evidence at the trial of this case, as well as any and all evidence regarding any other conversations between Giglio and Milo relating to either possible future marijuana dealings or to Giglio's pre- or post-2003 involvement in marijuana dealings. As will be addressed further herein, the discussions between Giglio and Milo regarding possible future marijuana transactions do not possess the "special relevance" to an issue in the case necessary to their admissibility under Rule 404(b) and would serve only to suggest to the jury the forbidden inference that Giglio had a propensity toward involvement in marijuana dealings. Giglio's statements to Milo suggestive of past involvement in marijuana dealings should also be excluded under Rule 404(b). They are completely unspecific as to the time frame regarding which Giglio is speaking, and nothing in those conversations suggests that he was referring to events which occurred during the relatively brief and finite time span of the conspiracy charged.[1] They are, therefore, evidence of other bad acts, which also lack the "special relevance" necessary to their admissibility under Rule 404(b) and would also serve only to suggest to the jury the forbidden inference that Giglio had a propensity toward involvement in marijuana dealings.

---

[1] Nothing in Giglio's statements particularizes them to the 2003 time frame of the charged conspiracy. Giglio is informed that Milo has told the government that Giglio was involved in marijuana dealings in 2000-2001, and the statements at issue are at least as consistent with references to 2000-2001 as they are to references to 2003. If anything, in fact, they are *more* consistent with references to 2000-2001. Bannerman was arrested in California in August, 2000. Milo has told the government that, after his arrest, Bannerman asked Milo to supply his customers – one of whom Milo says was Giglio – with marijuana and that Milo supplied Giglio with marijuana in 2000-2001 while Bannerman was on home detention. Giglio's references to events which occurred during the time frame when Bannerman was in "trouble" – troubles which Giglio says at one point began four years earlier, at the time of the Democratic National Convention in Los Angeles – are consistent with the topic of discussion being events in 2000-2001, two years or more prior to the alleged commencement date of the conspiracy charged, January, 2003. Moreover, when Milo originally contacted Giglio, it is obvious that Giglio did not recognize Milo's voice, a fact more consistent with any past relationship having ended years before the initial June, 2004, sting contact by Milo.

3

Giglio's statements regarding dealings which he may have had with marijuana customers in 2004 should also be excluded for similar reasons. Alternately, even were the Court to determine that these conversations were relevant to an issue in the case, their highly and unfairly prejudicial impact would substantially outweigh any probative value which the evidence might conceivably be found to have and deprive Giglio of his rights to a fair trial, to the presumption of innocence, and to be convicted only on proof beyond a reasonable doubt of the offense actually charged against him. The evidence should, therefore, be excluded under Rule 403.

Giglio also seeks to exclude from evidence at the trial of this case any and all evidence regarding 1/2 gram of marijuana found in his home at the time of his arrest. Such a tiny, personal-use quantity of marijuana has no "special relevance" to any issue in this case, as it has no tendency to prove that Giglio was a member of the conspiracy charged. Alternatively, the evidence should be excluded under Rule 403, as its unfairly prejudicial impact would vastly outweigh any probative value it might be found to have.

## II.    RULE 404(B) GENERALLY.

The First Circuit has adopted a two-part test to determine the admissibility of evidence under Rule 404(b). First, the evidence must be "specially probative of an issue in the case." *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996). *See, e.g., United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000); *United States v. Flores Perez*, 849 F.2d 1, 4 (1st Cir. 1988). Second, even if "special relevance" is found, the evidence must nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. "Rule 404(b) incorporates *sub silentio* the prophylaxis of [Rule] 403." *United States v. Sebaggala*, 256 F.3d 59, 67 (1st Cir. 2001). *See, e.g., Varoudakis*, 233 F.3d at 118; *Frankhauser*, 80 F.3d at 648.

The admission of Rule 404(b) evidence "is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the 'special' ground for doing so." *United States v. Garcia-Rosa*, 876 F.2d 209, 221 (1st Cir. 1989), *vacated on other grounds*, 498 U.S. 954 (1990), *quoting Flores Perez*, 849 F.2d at 8. *See, e.g., United States v. Lynn*, 856 F.2d 430, 436 (1st Cir. 1988). However, a proponent's

> incantation of the proper purposes of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence. Relevance is not an inherent characteristic, . . . nor are prior bad acts intrinsically relevant to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. . . . Thus, when prior bad act evidence is both relevant and admissible for a proper purpose, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, *no link of which may be the inference that the defendant has a propensity to commit the crime charged.*

*United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999)(emphasis added; citations and internal quotation marks omitted).

The First Circuit has consistently held that Rule 404(b) erects an "absolute bar" to evidence of prior bad acts if the "special relevance" proposed by the government "include[s] bad character or propensity as a link in the evidentiary chain." *Frankhauser*, 80 F.3d at 648. *See, e.g., Sebaggala*, 256 F.3d at 67 (the proffered evidence "must not merely show a defendant's reprehensible character or predisposition toward knavery . . . ."). *See also United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir. 1988).

> The state must not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.

*Varoudakis*, 233 F.3d at 123, *quoting Michelson v. United States*, 335 U.S. 469, 475-76 (1948).

Therefore, the government and the courts "must exercise great caution in handling evidence of other bad acts." *United States v. Williams*, 985 F.2d 634, 638 (1st Cir. 1993). Such caution is particularly necessary in light of the substantial impact which other bad acts evidence may have on the defendant's rights to the presumption of innocence and to proof of guilt beyond a reasonable doubt. *See, e.g., United States v. Wright*, 901 F.2d 68, 70 (7th Cir. 1990)("[A] jury is not likely to insist on the government's satisfying so demanding a standard of proof if the defendant is a thoroughly bad sort who even if not clearly guilty of the crime with which he is charged is no doubt guilty of some other crime or crimes for which he may never have been caught . . . ."); *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C.Cir. 1985)(it is "fundamental to American jurisprudence" that "a concomitant of the presumption of innocence is that a defendant be tried for what he did, not for who he is"). Courts must, therefore, "remain vigilant to whether other-acts evidence serves a genuinely probative purpose that substantially outweighs the risk of unfair prejudice." *Williams*, 985 F.2d at 638. *See Morley*, 199 F.3d at 139 ("the fact that Rule 404(b) acts as a rule of inclusion . . . does not open the floodgates to evidence that is only relevant to establish a defendant's bad character").

### III.   GIGLIO'S CONVERSATIONS WITH MILO.

####    A.   The Conversations Are Not Admissible On the Issue of Intent Or Knowledge.

Cases in which other acts evidence is admitted on the issues of knowledge and intent paradigmatically involve circumstances in which the contested issue at trial is whether the acts done by the defendant were innocently done or whether they were done with the requisite intent and knowledge to render him criminally culpable.

> Where the evidence is susceptible to the explanation that the acts alleged to constitute the crime were innocently performed and the crucial issues of intent and knowledge are keenly

disputed, . . . it is within the judge's discretion to permit the government to introduce evidence of prior similar offenses to demonstrate the unlikeliness that the defendant was merely an innocent and unknowing bystander.

*United States v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995). *See, e.g., United States v. Noah*, 130 F.3d 490, 496 (1st Cir. 1998); *United States v. Tutiven*, 40 F.3d 1, 5-6 (1st Cir. 1994); *United States v. Nickens*, 955 F.2d 112, 124 (1st Cir. 1992); *United States v. Desmarais*, 938 F.2d 347, 351 (1st Cir. 1991); *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 581 (1st Cir. 1987); *United States v. Molinares Charris*, 822 F.2d 1213, 1220 (1st Cir. 1987). Unlike such cases, while Giglio will contend at trial that he was not a member of the conspiracy charged, he will *not* contend that acts testified to by the witnesses were innocently done or otherwise argue that he acted without the intent or knowledge required to make him criminally culpable for the acts regarding which he anticipates that the government's witnesses will testify. The issue at trial will be whether the government can prove beyond a reasonable doubt that Giglio was a member of the conspiracy which the government has chosen to define as spanning the time frame between two discrete events, from January, 2003, to December 1, 2003.

What these and other cases make clear is the importance of asking, at the outset of the analysis, knowledge of what? intent to do what? "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Huddleston v. United States*, 485 U.S. 681, 689 (1998). *See, e.g., United States v. Macey*, 8 F.3d 462, 466 (7th Cir. 1993); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993); *United States v. Arias-Montoya*, 967 F.2d 708, 711 (1st Cir. 1992); *Garcia-Rosa*, 876 F.2d at 221. Here, neither intent nor knowledge will be "hotly disputed issues critical to guilt or innocence." *United States v. Hadfield*, 918 F.2d 987, 995 (1st Cir. 1990). They will not in fact really

be live issues at all, other than as purely theoretical components of the government's burden of proof. *See, e.g., United States v. Tarricone*, 996 F.2d 1414, 1421 (2d Cir. 1993)("Where a defendant claims that he did not commit the charged acts, as opposed to claiming that he acted innocently or mistakenly, knowledge and intent, while technically at issue, are not really in dispute"); *Lynn*, 856 F.2d at 436 ("intent, while technically at issue, [was] not really in dispute, greatly reducing any need for the jury to know of the previous conviction"). *See also United States v. Tse*, 375 F.3d 148, 155 (1st Cir. 2004)(other acts evidence "can . . . *rebut a defendant's claim* that his association with the alleged coconspirators was innocent"(emphasis added)).

While the First Circuit has indicated that knowledge and intent remain issues in conspiracy prosecutions, *see, e.g., United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir. 1987), Rule 404(b) would be rendered largely nugatory if the mere invocation of "conspiracy" sufficed to permit the introduction of other acts evidence. *See, e.g., United States v. Oppon*, 863 F.2d 141, 149 (1st Cir. 1988)(Coffin, J., concurring)(care must be used in admitting Rule 404(b) evidence on the issue of intent to ensure that the exception does not swallow the rule). A conspiracy charge is not a talisman which automatically opens the door to other crimes evidence said to demonstrate intent and knowledge. The danger of propensity evidence masquerading as "intent" and "knowledge" is simply too great. The strictures of Rule 404(b) are not loosened in conspiracy cases, and other crimes evidence offered in such cases is subject to the same analysis as that applicable in all cases – whether the evidence has "special relevance" to an issue in the case which does not invoke an inference based on the defendant's propensity to commit crimes of that sort.

Recently, the Eleventh Circuit, in an impeccably reasoned opinion, cut through much of the fiction surrounding the introduction of other act evidence on the issue of intent, rejecting the

government's contention that evidence of the defendant's prior drug conviction was admissible simply because the defendant had pled not guilty to a drug conspiracy charge:

> The government's theory is that "Matthew's not-guilty plea placed directly at issue his intent to join the conspiracy to distribute cocaine. It explains that "Matthews's defense at trial that he did not participate in the alleged drug dealing focused squarely on intent" because he "did not attempt to deny that he knew and associated with the individuals testifying against him." *The problem with this theory is that it is impossible for us to imagine a scenario under which the jury could have found that Matthews committed any of the acts described by his accusers and yet lacked the requisite guilty intent. The government emphasizes that Matthews was charged with participation in a conspiracy, which can be difficult to prove. That this is often true, however, is no basis for admitting prior drug-related arrests whenever a conspiracy is alleged.* In order to prove a conspiracy to distribute cocaine, the government must establish beyond a reasonable doubt: 1) the existence of an agreement among two or more persons; 2) that the defendant knew of the general purpose of the agreement; and 3) that the defendant knowingly and voluntarily participated in the agreement. Here, the government's witnesses testified to Matthews's participation in numerous large cocaine deals in 1999, 2000, and 2001. The quantities involved ranged from a single kilogram to as much as twenty kilograms at prices of $18,000 to $23,000 per kilogram. Such conduct is not open to an innocent explanation; that is, there was no room for Matthews to say, "Well, yes, I did those things, but I did not intend to conspire to distribute cocaine." *By the time the government put on its 404(b) evidence, it should have been clear that the government's case would rise or fall based on whether the jury believed Matthews had committed the charged acts at all, not on whether he possessed the requisite guilty intent.*

*United States v. Matthews*, 411 F.3d 1210, 1224-25 (11th Cir. 2005)( emphasis added; internal quotation marks and citation omitted). The Court also rejected out-of-hand the government's argument that it needed the Rule 404(b) evidence because its case rested on the testimony of cooperating witnesses:

> The government argues that it "needed the extrinsic evidence to satisfy its heavy burden" because its case "rested almost exclusively on the testimony of the cooperating defendants whose agreements with the United States and . . . own criminal behavior undercut their credibility – a matter thoroughly explored by Matthews at trial." We do not doubt that the government thought that it needed the extrinsic offense evidence. But it is clear that they did not need it to prove intent. We cannot see how a juror would have found the witnesses credible to the extent that they described buying large quantities of cocaine from Matthews on numerous occasions over a period of more than two years and yet doubted that Matthews did, in fact, intend to involve himself in a conspiracy to distribute cocaine. The suggestion is preposterous. What the government really means is that it "needed the extrinsic evidence

to satisfy its heavy burden" because it feared that the jurors would not believe its witnesses *at all*. The government wanted the jury to infer that Matthews was dealing drugs [in] 1991 and was still dealing drugs in 1999, 2000, and 2001. This is precisely the inference the law does not allow.

*Id.* at 1225-26 (emphasis in original). The Court held "emphatically" that it is *not* the law that "prior drug dealing is admissible whenever a defendant pleads not guilty to conspiracy to distribute drugs," "regardless of the theory of defense or other evidence presented by the government." *Id.* at 1226. Instead,

[w]here intent . . . is a necessary conclusion from the act, and the act charged is not equivocal, proof of other offenses will not be permitted. Put simply, if the conduct charged is not open to a plausible innocent explanation, then extrinsic evidence is not admissible to show intent. *At a minimum, the government must be able to give the court a scenario in which the jury might find that the defendant committed some or all of the acts alleged and yet lacked the requisite criminal intent. If it cannot do so, its case must, as it should, rise or fall on the strength of its evidence that the defendant committed the charged acts.*

*Id.* at 1228 (emphasis added; internal quotation marks and citations omitted).

This Court should, for similar reasons, reject any suggestion by the government that the challenged evidence has any "special relevance" on the issues (or, more accurately, non-issues) of Giglio's intent and knowledge. The government will not be able to articulate any permissible rationale for the admission of this evidence which is not, in essence, based on an inference that because Giglio was involved in marijuana dealing in the past and because he for a time in 2004 – well *after* the date on which the conspiracy charged is alleged to have ended – discussed becoming involved in a future marijuana transaction with Milo (although he ultimately declined to participate in any venture Milo might be organizing), he was more likely to have been a member of the marijuana conspiracy charged. Regardless of the circumlocution in which it is dressed, any such chain of inference must necessarily incorporate propensity as a link in the chain. This is precisely the use prohibited by Rule 404(b), and the evidence should, accordingly, be excluded.

### B.  The Conversations Are Not Admissible On Any Other Theory.

As addressed in Section II, *supra*, the government, as the proponent of the evidence, bears the burden of articulating a proper basis for the admissibility of evidence under Rule 404(b). While Giglio does not know precisely how the government will argue that the evidence has "special relevance" to an issue properly provable in the case, he anticipates that the government will also invoke other rationales which it routinely does in conspiracy cases, for example, that evidence of other marijuana dealings is admissible "as evidence of the background, formation and development of the illegal relationship," *United States v. Balthazard*, 360 F.3d 309, 317 (1st Cir. 2004), or "to help the jury understand the basis for the coconspirators' relationship of mutual trust." *United States v. Santana*, 342 F.3d 60, 67 (1st Cir. 2003). *See, e.g., United States v. Escobar-deJesus*, 187 F.3d 148, 168 (1st Cir. 1999).

Like the intent/knowledge rationale, such rationales cannot simply be invoked as a rubber-stamp for admission of other acts evidence in every conspiracy case. Rule 404(b) demands a case-specific assessment of the "special relevance" of each item of evidence proffered under Rule 404(b), not simply a reflexive designation of the case as a conspiracy case. As with all Rule 404(b) evidence, before the Court can admit such evidence, the government must articulate a permissible basis for its admissibility, setting forth the inference which it desires the jury to draw from the evidence. The Court must then examine the government's proposed inference – not simply the words in which it is couched, but the actual effect which the introduction of the evidence would have on the jury, in light of the government's other evidence – and only conclude that the evidence satisfies the "special relevance" test of Rule 404(b) if the forbidden propensity evidence is not a link in the inferential chain proposed by the government.

Here, nothing in Giglio's statements which are consistent with his having delivered marijuana to customers of his own in 2004 has any tendency to prove any element of the conspiracy charge against him. The conversations are devoid of any indicia that these dealings, if they occurred, had anything to do with the conspiracy charged or the alleged coconspirators. The only inference which the jury would draw from this evidence is that Giglio's 2004 marijuana-related activities made it more likely that he was a marijuana dealer in 2003 and, hence, more likely that he was involved in the conspiratorial acts regarding which he anticipates that the government's cooperating witnesses will testify. This is precisely the propensity inference forbidden by Rule 404(b).

Similarly, Giglio's discussions with Milo regarding Giglio's potential future purchase of marijuana from Milo would only serve the forbidden propensity purpose of suggesting to the jury that, because Giglio initially expressed interest in obtaining marijuana from Milo in 2004, he was more likely to have been a member of a conspiracy of which Milo was a member in 2003.[2] This is no more than a retrospective "once a drug dealer, always a drug dealer" inference. Giglio's statements consistent with his having been involved in marijuana dealings with Bannerman[3] before the 2003 conspiracy charged stand on similar footing. Giglio's statements are far too generic and unparticularized as to time to provide a basis for any inferences regarding the possible formation and development of a conspiratorial relationship in 2003, nor is an inference that Giglio may have trusted Bannerman in the past relevant to any issue properly provable in the case. This is, once again, the paradigmatic "once a drug dealer, always a drug dealer" evidence categorically forbidden

---

[2] Giglio will not deny that he knows Milo or that he knew him prior to 2003.

[3] Giglio will also not deny that he knew Bannerman.

by Rule 404(b).

>    **C.    Even If The Court Concludes That Any Of The Challenged Evidence Is Admissible Under Rule 404(b), The Evidence Should Nonetheless Be Excluded Under Rule 403, As Any Probative Value Which It Has Is Substantially Outweighed By The Danger Of Unfair Prejudice To Giglio.**

Even should this Court conclude that the conversations between Giglio and Milo regarding pre- and/or post-2003 marijuana dealing by Giglio survive Rule 404(b)'s absolute bar, whatever probative value the evidence has – and Giglio does not concede that it has any – would be *substantially* outweighed by the danger of unfair prejudice. Courts "should exclude [other bad] acts under Rule 403, when [they] determine[] that the possible character inferences that can be drawn from this evidence outweigh its probative value as to noncharacter evidence so as to make its admission unfairly prejudicial to the defendant." *Oppon*, 863 F.2d at 147. The First Circuit in *Varoudakis* examined at length the meaning of "unfair prejudice" in Rule 403:

>    Rule 403 . . . protects defendants from unfair prejudice resulting from criminal propensity evidence. . . . [I]mproper grounds under Rule 403 "certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act charged.

233 F.3d at 122, *quoting Old Chief v. United States*, 519 U.S. 172, 180 (1997). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into finding guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. *See United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982)(Breyer, J.)("Although propensity evidence is relevant, the risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance").

It is difficult to imagine any evidence which could be more prejudicial to Giglio in this trial

for a marijuana conspiracy offense than evidence that both before and after the time frame of the alleged conspiracy, he engaged in marijuana dealings or expressed his willingness to engage in marijuana dealings. As the First Circuit said in *Varoudakis*:

> There is clearly a tension between Rules 404(b) and 403. The more similar the prior bad act evidence is to the charged crime, the more likely it is to be deemed relevant under Rule 404(b). Yet the more the prior bad act resembles the crime, the more likely it is that the jury will infer that a defendant who committed the prior bad act would be likely to commit the crime charged. . . . This is precisely the kind of inference that Rule 403 guards against.

233 F.3d at 123. Giglio's statements regarding pre-2003 dealings are particularly prejudicial, as they include references to hundreds of pounds of marijuana. There is simply no way that the jury, hearing this evidence, would not use it for forbidden propensity purposes, even with careful limiting instructions.[4] That is, after all, the government's purpose in seeking its admission. *See Morley*, 199 F.3d at 139 (noting the "adversarial tendency of the proponents of such evidence to be less than candid about their motives for offering evidence that suggests that a defendant's character is suspect"). "A legitimate component of [the Rule 403] weighing process is the trial court's informed judgment whether, despite the technical admissibility of the other acts evidence, the jurors are more likely than not to use the evidence for the very purpose for which the first sentence of the rule states that it may not be used." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). Here, it is impossible to "escape the conclusion that the most powerful inference the jury [is] likely to make from the [other acts] [is] the forbidden one. . . . The spectre of impermissible character evidence is

---

[4] Courts have recognized that the prejudice flowing from the admission of Rule 404(b) evidence may in some cases be beyond the capacity of a limiting instruction to cure. *See, e.g., Garcia-Rosa*, 876 F.2d at 222; *Daniels*, 770 F.2d at 1118; *United States v. Neary*, 733 F.2d 210, 217 (2d Cir. 1984).

likely to . . . significantly overshadow[] any legitimate probative value." *Aguilar-Aranceta*, 58 F.3d at 801.

The likelihood that the jury would use the evidence for forbidden propensity purposes is particularly strong in this case, as the government's case against Giglio is almost entirely dependent on the testimony of cooperating witnesses doing their best to curry favor with the government. The government will, therefore, no doubt argue that it should be permitted the evidence because it "needs" it. To be sure, the First Circuit has indicated that, in drawing the Rule 403 balance, the "government's need for the evidence" is one factor to be considered as part of the "totality of the circumstances" relevant to the determination. *See, e.g., Varoudakis*, 233 F.3d at 122. The government's need for the evidence is, however, but one factor among many. It does not have, nor can it have, outcome-determinative significance. The government's need for the evidence may add to its probative value, but it also may concomitantly aggravate the risk of unfair prejudice to the defendant that the jury will be swayed to convict by drawing a forbidden propensity inference from the other act. As the Seventh Circuit has explained:

> [I]t seems incorrect to suggest . . . that the greater the need for the evidence, the more likely it will be admissible. *In a case where the 404(b) evidence is central to the government's proof,* both *the probative value* and *the threat of unfair prejudice are increased.*

*United States v. Leight*, 818 F.2d 1297, 1302 n.3 (7th Cir. 1987)(emphasis added). Thus, the government cannot prevail simply by labeling the contested evidence critical to its case.

With specific respect to this case, the government does not really "need" the evidence in any permissible sense. As addressed in Section III(A), *supra*, Giglio's intent and knowledge will not actually be contested issues in the case, drastically reducing the probative value of the evidence. *See* cases cited at page 8, *supra*. *See also United States v. Rodriguez-Cardona*, 924 F.2d 1148, 1152 (1st

Cir. 1991)(probative value of other acts evidence "is strengthened if the issue on which it is offered is specifically disputed").[5] Nor will there be any *real* issues regarding the formation of the charged conspiracy or the interrelationship of the coconspirators; as in *Matthews*, if the jury believes what the government's coconspirator witnesses have to say about Giglio, the jury will certainly conclude that he was a member of the charged conspiracy. Also as in *Matthews*, the government does not state a valid need for the evidence when, here as there, its real contention is that it needs the evidence because it is afraid that without it the jury will decline to believe its cooperating witnesses. As the *Matthews* Court cogently noted, that the jury might be more likely to believe the testimony of the government's witnesses if it knew that Giglio was involved in marijuana dealing before and/or after the charged conspiracy is a pure – and forbidden – propensity use of the evidence. The evidence should be excluded.

Even if the Court concludes that some of the proffered evidence is admissible under Rule 404(b), the evidence which the jury is permitted to hear should be "limit[ed] to what is legitimately necessary." *Frankhauser*, 80 F.3d at 650 n.6. *See, e.g., United States v. Burke*, 948 F.2d 23, 27 (1st Cir. 1991)("Where the relevant evidence is reasonably separable, a trial judge may restrict the prosecutor's presentation to the relevant evidence only, and curtail the proponent's inquiry into irrelevant and unfairly prejudicial details"). Particularly in light of the generalized and unparticularized nature of many of Giglio's statements, the conversations should be redacted to exclude all portions which are not fairly relevant to the issue on which they are being admitted.

### IV. THE HALF-GRAM OF MARIJUANA FOUND IN GIGLIO'S HOME.

---

[5] Any probative value of the evidence is further diminished by its evident "puffing" characteristics.

The possession of a tiny personal use quantity of marijuana is too dissimilar to the conspiracy offense charged to have any relevance to any issue properly provable in the case. In *Garcia-Rosa*, the government introduced evidence that a defendant who had loaned money used to finance a drug transaction had possessed a small quantity of cocaine. The Court reversed the defendant's conviction, stating that

> [t]he argument that [the defendant] is more likely to have known the purpose of the loan – to import large quantities of cocaine and heroin – because he possessed 99 mg of cocaine in the past is rank speculation once propensity is set aside. *To be admissible under Rule 404(b), there must be a tighter logical link between the extrinsic act and the charged crime.*

876 F.2d at 221 (emphasis added). In *Lynn*, a prosecution for conspiracy to import marijuana, the government introduced evidence that six years previously the defendant had sold marijuana to an undercover agent. The Court reversed, in part because "the state of mind of someone who consummated a street sale to an undercover agent" was not the same as that of "one who participated in an international smuggling conspiracy." 856 F.2d at 436. *See also Flores Perez*, 849 F.2d at 6-7 (vacating conviction where there was no "easily found logical link" between defendant's prior possession of an unlicensed firearm and any special knowledge regarding trafficking in altered firearms); *United States v. Cortijo-Diaz*, 875 F.2d 13, 16 (1st Cir. 1989)(vacating conviction where there was "no causal or logical connection between attempting to commit robbery and physically assaulting someone else in a separate incident").

Here, there is no logical link between the possession of 1/2 gram of marijuana on January 4, 2005 and membership in a conspiracy to possess marijuana with intent to distribute in 2003. The evidence is, simply, not relevant to any issue in the case. It has absolutely no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The evidence should be

excluded.

Even if the Court finds that the evidence has some relevance to any issue properly provable in the case, the evidence should nonetheless be excluded under Rule 403. The unfair prejudicial impact of the evidence would substantially outweigh any conceivable relevance the evidence might be found to have. The danger that the jury would extrapolate from Giglio's possession of marijuana in his home in 2005 to an inference of involvement in marijuana dealings in 2003 is too great to be permitted in the interests of fundamental fairness.

## CONCLUSION

For all the foregoing reasons, the challenged evidence should be excluded as evidence at the trial of this case.

Respectfully submitted,
By his attorney:

*/s/ Martin G. Weinberg*
Martin G. Weinberg
Mass. Bar. No. 519480
20 Park Plaza, Suite 905
Boston MA 02116
(617) 227-3700

Date: August 30, 2005