UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 03-10370-DPW |
| | ) | |
| FRANK GIGLIO | ) | |

### Affidavit of Robert M. Goldstein in Support of Giglio's Motion for Remedial Measures Regarding Jury Selection

Under oath, I declare and state the following:

1.      My name is Robert M. Goldstein, I am an attorney with an office at 20 Park Plaza, Suite 903, Boston, Massachusetts, and, along with Martin G. Weinberg, I represent Frank Giglio in the above-captioned matter. I submit this affidavit in support of Mr. Giglio's motion for remedial measures regarding jury selection in this case.

2.      In a memorandum and order issued in the matter styled United States v. Green, Crim. No. 02-10301-NG, the Honorable Nancy Gertner set forth in detail the process by which the potential venire is assembled in the United States District Court for the District of Massachusetts.

3.      According to Judge Gertner's memorandum, the State Office of the Jury Commissioner ("OJC") starts with a "source list" comprised of lists of names and addresses of potential jurors, and then randomly draws a percentage of the names to create a "master jury wheel" for the federal Jury Administrator. see Memorandum and RE: Defendants' Challenge to the Composition of Jury Venire, United States v. Green, Crim. No. 02-10301-NG, at 16, hereinafter "Judge Gertner Memorandum").

4.      The Jury Selection and Service Act, 28 U.S.C. § 1861 et seq. (the "Act" or

1

"JSSA") states that each federal district court "shall prescribe some other source or sources of names [of prospective jurors] in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title." 18 U.S.C. §1863(b)(2); Gertner Memorandum at 16.  In 1992, an amendment to the Act provided that the District of Massachusetts "may require the names of prospective jurors to be selected from the resident list provided for in chapter 234A, Massachusetts General Laws, or comparable authority, rather than from voter lists" as its source of names for the master jury wheel. 28 U.S.C. §1863(b)(2); Judge Gertner Memorandum at 16-17.

5.      "For Massachusetts, the OJC compiles a single-numbered statewide resident list from the resident lists allegedly prepared annually by every Massachusetts city and town." Judge Gertner Memorandum at 17-18. "To construct the Eastern Division's master jury wheel, the OJC randomly draws 1% of the names on that portion of the OJC resident list that represents the 190 cities and towns in the Eastern Division." Judge Gertner Memorandum at 18.

6.      The federal Jury Administrator determines the approximate number of jurors needed in any given week or month and then randomly selects that number of potential jurors from the master jury wheel and mails them summonses and questionnaires. Judge Gertner Memorandum at 18.

7.      Only those potential jurors who complete and return questionnaires, and who are not eligible for automatic disqualification, are placed in the "available jury wheel"—i.e., the pool of people who are eligible for federal jury service. Judge Gertner Memorandum at 19. Not all people who are mailed a summons and questionnaire return

the questionnaire, either because they never receive the summons or they fail to respond. Judge Gertner Memorandum at 19-20.

8.    "Combining data from 2001 through 2003, approximately 88% of persons who returned their questionnaires identified their race." Judge Gertner Memorandum at 20. According to Judge Gertner's memorandum and order, "[d]espite some limitations in the data, it is abundantly clear that African-Americans are persistently underrepresented in Eastern Division available juror pools." Judge Gertner Memorandum at 20-21. According to Judge Gertner's memorandum and order, "[i]n 2001, African-Americans comprised 6.75% of the Eastern Division population according to United States Census ('U.S. Census') estimates, but only 3.08% of those who identified race on returned questionnaires. In 2002, African-Americans comprised 6.84% of the Eastern Division population but only 3.17% of those who identified race on returned questionnaires. In 2003, African-Americans comprised 6.96% of the Eastern Division population but only 3.17% of those [who] identified race on returned questionnaires." Judge Gertner Memorandum at 21.

9.    "Under 28 U.S.C. §1867(d), if the court determines that there has been a 'substantial failure' to comply with the provisions of the Act, 'the court shall stay the proceedings pending the selection of a petit jury in conformity with this title." Judge Gertner Memorandum at 68, quoting 28 U.S.C. §1867(d).

10.    The Jury Plan of the District of Massachusetts "gives the Clerk, in consultation with the Chief Judge, the option of implementing a data processing system that will, *inter alia*, ensure that, in 'the selection of names from the source list and the

master wheel … the mathematical odds of any single name being picked are substantially equal.'" Judge Gertner Memorandum at 69.

11.    According to Judge Gertner's memorandum and order, "the 'mathematical odds' that any given name will be picked are not 'substantially equal' across the region, as the Plan requires." Judge Gertner Memorandum at 70.

12.    According to Judge Gertner's memorandum and order, "[a] citizen's chances of getting on a federal jury are far better in Needham and Sudbury, which update their lists through multiple mailings, telephone calls, and even door-to-door visits, than they are in Lynn and Brockton, where there is no follow-up, or in New Bedford, where there has not been an annual count since 1999." Judge Gertner Memorandum at 70.

13.    According to Judge Gertner's memorandum and order, [n]or has the random selection of names from resident lists, rather than voting lists, been sufficient to guarantee a fair cross-section of the community. If the Lynn, New Bedford and Brockton resident lists are inaccurate, it does not matter how perfectly random the procedures used by the Court are to cull names from resident lists; the names on the list are chimerical." Judge Gertner Memorandum at 70.

14.    According to Judge Gertner's memorandum and order, "these deficiencies are hardly unsubstantial; they result in high rates of undeliverables and nonresponses to jury summonses, particularly in communities with large African-American populations." Judge Gertner Memorandum at 70.

15.    The affiant moves to incorporate the six affidavits and testimony of Andrew Beveridge, Professor of Sociology at Queens College and the Graduate Center of the City University of New York, in the Green matter. See Judge Gertner Memorandum

at 27-28. Professor Beveridge's affidavits can be found at docket entries 254, 260, 295, 308, 311, and 337 of the Green matter.[1] With regard to his testimony, the affiant could locate a transcript for the testimony of January 26, 2005 (docket entry 283), but could not locate a docket entry for a transcript for his January 11, 2005 testimony.

16.     The affiant moves to incorporate the testimony of the federal Jury Administrator, James McAlear, in the Green matter. See Judge Gertner Memorandum at 28; Docket Entry 283.

17.     The affiant notes that a report was submitted in the Green matter by Professor Jeffrey Abramson, who was appointed by and for the Court in that matter, who apparently concluded that the defendants had not made out either a constitutional violation or a violation of the JSSA. See Judge Gertner Memorandum at 28-29; Docket Entry 329.

Signed under the pains and penalties of perjury this 6th day of September 2005.


**/s/ Robert M. Goldstein**
Robert M. Goldstein

---

[1]. The motion to dismiss was technically filed by defendant Branden Morris and hence any Pacer search for these docket entries should be conducted within defendant Morris' docket.