UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Crim. No. 03-10370-DPW |
| | ) | |
| FRANK GIGLIO | ) | |
| | ) | |

**DEFENDANT FRANK GIGLIO'S MOTION TO DISMISS
THIRD SUPERCEDING INDICTMENT OR, ALTERNATIVELY, TO ORDER THE
GOVERNMENT TO PROCEED TO TRIAL ON THE FIRST SUPERCEDING
INDICTMENT AND INCORPORATED MEMORANDUM OF LAW**

Now comes the defendant Frank Giglio in the above-captioned case and respectfully moves, pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, that this Honorable Court dismiss the third superceding indictment in this case. Alternatively, defendant Giglio requests that this Honorable Court order that the trial of this case proceed on the first superceding indictment.

As reason therefor, defendant states:

1. The original indictment in this case was returned in December, 2003, following a lengthy investigation which included four months of electronic surveillance of the telephones of Kurt Walter and Doug Bannerman. This investigation did not produce evidence against Giglio sufficient to warrant his indictment, and he was not indicted at that time.

2. Notwithstanding its failure to inculpate Giglio in the conspiracy charged in the original indictment, the government targeted Giglio for further investigation, using against him a cooperating defendant, Gary Milo, a major marijuana dealer, whose assignment was two-fold: (1) to engage Giglio in conversation about past involvement in marijuana dealings, and (2) to induce Giglio to

involve himself in future marijuana dealings with Milo. Although Giglio ultimately declined to engage in marijuana dealings with Milo, he did have conversations with Milo which are consistent with his having been involved in marijuana dealings at some time in the past. In October, 2004, the government obtained a first superceding indictment, which remained under seal until January, 2005, which named Giglio as a defendant, charging him with membership in the conspiracy to possess marijuana with intent to distribute from January, 2003, to December 1, 2003, which was charged in the original indictment. Giglio was arraigned on that indictment on January 4, 2005.

3.  On February 8, 2005, trial of this case, which was estimated to last two to three weeks, was scheduled for September 12, 2005, a date which the Court has consistently instructed the parties was a firm trial date.

4.  On August 11, 2005, the government obtained a second superceding indictment which did not alter the dates of the conspiracy charged or change the language of the conspiracy count in which Giglio was charged.

5.  On August 30, 2005, defendant filed his Motion *in Limine* to Exclude Evidence Pursuant to Fed. R. Evid. 404(b), 403 and Incorporated Memorandum of Law, which sought the exclusion from evidence at the trial of this case of Giglio's statements to Milo. An essential component of the arguments advanced in that motion and memorandum was the contention that, if Giglio's statements did relate to prior involvement in marijuana dealing, they were uniformly concerned with a time period in 2000-2001, well before the beginning of the charged conspiracy.

6.  The government filed a response to that motion, but it also responded in another way as well: on September 8, 2005, only two business days before the beginning of a trial for which Giglio and his counsel had been preparing Giglio's defenses based upon the dates of the conspiracy charged

in the first superceding indictment, the government obtained a third superceding indictment which both *quadrupled* the length of the conspiracy charged – changing the beginning date of the conspiracy charged from January, 2003, to August, 2000 – and, for the first time, adding a criminal forfeiture allegation pursuant to 21 U.S.C. §853 against Giglio. The first notice that Giglio received that the government was contemplating such action came during a telephone conversation between Giglio's counsel and AUSA Levitt on the morning of September 2, 2005.

7.  The third superceding indictment was returned in retaliation against Giglio for exercising his legal right to seek the exclusion of evidence against him at trial, in violation of the Due Process Clause of the Fifth Amendment and should, therefore, be dismissed.

8.  Alternatively, if the Court concludes that the third superceding indictment should not be dismissed, the Court has the power and authority to order the government to proceed to trial on the first superceding indictment. Based upon the government's delay until virtually the eve of a long-scheduled trial and the severe prejudice to Giglio in the preparation of his defenses, this Court should exercise that power.

As further reason therefor, defendant refers the Court to the Memorandum of Law incorporated herein.

**REQUEST FOR HEARING**

Defendant Giglio requests a hearing on the within motion.

**LOCAL RULE 7.1(A)(2) STATEMENT**

Counsel has conferred with Rachel Hershfang, AUSA, and she opposes the granting of this motion.

**MEMORANDUM OF LAW**

I. **INTRODUCTION.**

This Court clearly retains the power and authority to deny the government's "twelfth hour" reversal of strategy and to require instead that it proceed to trial based on the first superseding indictment. The Court can and should consider (a) the prejudice to Giglio, who directed his resources to the preparation of a defense to the specific criminal charge – a marijuana conspiracy alleged to have lasted from January, 2003, to December 1, 2003 – that had been pending from the date of his arraignment in January, 2005, until two business days before the scheduled start of his September 12, 2005, trial; (b) the reason for the new and expanded charge – as expressed by AUSA Levitt at a status conference on September 2, 2005, it was a purely "tactical" matter in "trying to win a trial;" (c) the catalyst for the new and substantially broadened charges – Giglio's exercise of a legal right, the filing of a motion *in limine* challenging the admissibility of evidence, particularly the September 15, 2004, tape of a conversation between Giglio and Milo; and (d) the lack of any social interest in the expanded charges contained in the third superseding indictment. *See Goodwin v. United States*, 457 U.S. 368, 380 n.11 (1982).

The subtext for this case is the government's inflexible employment of the 21 U.S.C. §851 weapon against a citizen who has a prior record but who played only a minor role in the conspiracy charged. Frank Giglio was not even charged in the original 2003 indictment which centered around the marijuana trafficking activities of Doug Bannerman and Kurt Walter. The marijuana was largely supplied by Gary Milo, a major-league transporter of approximately 30,000 to 40,000 pounds of marijuana from Arizona, New Mexico, and California into Massachusetts in 2000-2003, who began to cooperate shortly after his December, 2003, arrest. Milo entered into a plea agreement with

the government in February, 2004, and pled guilty in April, 2004, to a one-count information in *United States v. Milo*, No. 04-10054-NMG. Thereafter, law enforcement authorities directed Milo, as part of his cooperation with the government, to induce Giglio, who was believed to be an employee of Bannerman's, into agreeing to purchase marijuana. Giglio refused, but during a secretly-recorded conversation with Milo in September, 2004, made statements to Milo which led to Giglio's addition to the pre-existing indictment through the return of the first superceding indictment.

Giglio, unlike Milo, Bannerman, and Walter, is legitimately employed, working more than 40 hours a week in his antiques business, in which he has engaged for twenty years. Giglio is a father of four, including an infant daughter, has no ostensible illegitimate wealth, and, but for the §851 charge, the result of which would be a 10-year mandatory minimum sentence if he is convicted and held accountable for more than 220 pounds of marijuana, would have resolved this case without a trial. The societal interest in broadening the indictment is non-existent: absent Milo, who supervised his own marijuana trafficking organizations, who became an informant, who is now a witness, and who expects to receive a sentence of considerably less than ten years as the result of a government motion pursuant to USSG §5K1.1 and 18 U.S.C. §3553(e), there is no danger to the community, proof of which being Giglio's rejection of the undercover initiative to induce him to buy Milo's offered 2004 marijuana in a tape-recorded "sting" operation.

The end game of immunizing Milo for most of the 40,000 pounds of marijuana which he brought into Massachusetts, permitting him to execute a plea agreement alleging only 1,000-3,000 kilograms of marijuana as his base guideline, subject to the further rewards that are routinely exchanged for "substantial assistance," yet invoking the Draconian punishment generated by a §851

filing for a significantly less culpable defendant is a perversion of the objectives of drug enforcement. The purely tactical last-minute expansion of a previously-returned indictment, converting a one-year conspiracy into a four-year conspiracy and adding a forfeiture count all because of Giglio's assertion of a legal right is retaliatory, unnecessary, serves no public purpose, and should be rejected. *See United States v. Cowan*, 524 F.2d 504, 512-13 (5th Cir. 1975), *cert. denied sub nom. United States v. Woodruff*, 425 U.S. 971 (1976).

II.  **THIS COURT SHOULD DISMISS THE THIRD SUPERCEDING INDICTMENT ON THE GROUND OF PROSECUTORIAL VINDICTIVENESS OR, ALTERNATIVELY, ORDER THAT THE GOVERNMENT PROCEED TO TRIAL ON THE FIRST SUPERCEDING INDICTMENT.**

Giglio anticipates that the next step in which the government will engage to further its retaliatory campaign against Giglio will be to formally move to dismiss the first superceding indictment. The circumstances of this case provide more than adequate justification for this Court to exercise the power, which it undoubtedly has, to decline to dismiss the first superceding indictment and instead to order the government to proceed to trial on the first superceding indictment. At common law, the executive had absolute power to dismiss an indictment. *See United States v. Smith*, 55 F.3d 157, 158 (4th Cir. 1995). The Supreme Court, concerned about the obvious potential for abuse of the executive power inherent in the unfettered discretion to indict and dismiss at will, added, in Fed. R. Crim. P. 48(a), a requirement for judicial oversight of the executive's dismissal decisions "to protect a defendant against prosecutorial harassment." *In re Richards*, 213 F.3d 773, 786 (3d Cir. 2000), *quoting Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977). *See, e.g., United States v. Carrigan*, 778 F.2d 1454, 1463 (10th Cir.1985). Rule 48(a) provides, in pertinent part: "The government may, *with leave of court*, dismiss an indictment, information, or complaint" (emphasis added). The "with leave of court" language of Rule 48 (a) was intended to

> modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

*Cowan*, 524 F.2d at 513. *See United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 75 F.R.D. 473, 475 (S.D.N.Y. 1977). Generally speaking, as *Cowan* indicates, courts are to grant government motions to dismiss indictments under Rule 48(a) unless to do so would be clearly contrary to manifest public interest. *See, e.g., United States v. Romero*, 360 F.3d 1248, 1251 (10th Cir. 2004); *United States v. Jacobo-Zavala*, 241 F.3d 1009, 1013 (8th Cir. 2001); *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1008 (9th Cir. 2000); *In re Richards*, 213 F.3d at 787. However, courts have also recognized that the "with leave of court" requirement of Rule 48(a) necessarily subsumes the power "to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts." *Carrigan*, 778 F.2d at 1463. *See also Cowan*, 524 F.2d at 512 ("we think it manifestly clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice"). In this case, the public interest in the fair administration of criminal justice requires that the government's motion to dismiss the first superceding indictment be denied.

Many, if not most, Rule 48(a) cases involve government motions to dismiss indictments which would completely terminate the prosecution of the defendant. In such cases, separation of

powers concerns are at their zenith. In the context of superceding indictments, however, the balance is rather different, in that the government, rather than exercising its executive prerogative to decline to prosecute someone at all, is essentially changing the playing field in the middle of the game, after the defendant has prepared for trial on the earlier indictment, after the court has conducted proceedings on the assumption that the case would proceed to trial on the earlier indictment, and after the court has scheduled the case for trial and committed the resources of the court to trying the defendant during a particular block of time. In that context, the legitimate interests of the judiciary are much stronger. It is no longer a case of the judiciary telling the executive that it must prosecute someone whom the executive has decided it no longer should – it is the judiciary trying to control matters that are within the judicial, rather than the executive, prerogative, *e.g.,* when cases will be tried and preventing prejudice to the defendant.

For this and other reasons, when more than one indictment is pending against the defendant in the same case, courts retain the power to determine on which of the pending indictments the case will proceed to trial. The return of a superceding indictment does not automatically void an earlier indictment. *United States v. Vavlitis*, 9 F.3d 206, 209 (1st Cir. 1993). At least where the superceding indictment has been returned belatedly, on the eve of trial, as here, the courts have the discretion to insist that the government proceed to trial on the earlier indictment rather than continue the case to permit the defendant adequate preparation time. For example, the court in *United States v. Kouri-Perez*, 47 F.Supp.2d 166, 169-70 (D.P.R.1999), required the government to go to trial on a second superceding indictment where the third superceding indictment was returned shortly before trial, defendants had been preparing for trial on the second superceding indictment for a year, and the third superceding indictment added 21 months to the life of the conspiracy. *See, e.g., United States*

*v. Bowen*, 946 F.2d 734, 736-37 (10th Cir. 1991)(district court did not err in holding that because of untimeliness, defendant would not be required to stand trial on second superceding indictment and case would proceed to trial on first superceding indictment). *See also United States v. Smith*, 24 F.3d 1230, 1234 (10th Cir.)(under certain circumstances, courts may force government to trial on an earlier indictment), *cert. denied*, 513 U.S. 905 (1994); *United States v. Del Vecchio*, 707 F.2d 1214, 1216 (11th Cir. 1983)(when two indictments are pending at the same time, district court has discretion to decide which one to dismiss).

Here, Giglio has been preparing to defend himself against a charge that he was a member of a marijuana conspiracy during a finite 11-month period in 2003, from January, 2003, until December 1, 2003, dates chosen by the government for their correspondence to specific marijuana transactions which provided readily-ascertainable bookends for the period on which the defense was required to focus. For example, acts and statements within that time period might be found to be part of that conspiracy, but acts and statements before January, 2003, could not be; evidence suggesting that Giglio may have been involved in marijuana dealings before January, 2003, could be excluded as irrelevant or, under Rule 403, because it was unfairly prejudicial. Giglio's resources and his counsel's time and energy have been devoted to defending Giglio at a trial of a 2003 marijuana conspiracy charge, a trial which had for more than six months been firmly scheduled to begin on September 12, 2005. Throughout this time, until September 2, 2005, the government gave neither Giglio nor this Court the slightest inkling that it was so much as contemplating bringing a superceding indictment with an expanded conspiracy charge. Permitting the government to proceed to trial on the 2000-2003 marijuana conspiracy charge in the third superceding indictment would require Giglio to scrap many of the defensive efforts in which he and his counsel have engaged over

the past nine months, to prepare new defenses, to conduct new investigation, and force Giglio to expend considerable additional resources.[1] Certainly there is a strong – and manifest – public interest, which should be considered in determining the indictment on which the government will be required to proceed to trial, in preventing this sort of stress and distress to citizens who spend their time and resources preparing to defend themselves on one charge, only to find themselves, on the eve of a long-scheduled trial date on the original charges against them, faced with an exponentially more complex charge, covering a time period four times as long as the initial charge, and an added forfeiture allegation against which they must also prepare their defenses.

There is no valid justification for the government's delay in bringing the third superceding indictment. That Giglio intended to present a "temporal defense," Government's Opposition to Giglio's Motion *In Limine* to Exclude Evidence Pursuant to FRE 404(b) & 403 ("Gvt. Opp.") at 3, cannot possibly have come as a surprise to the government. How else, one might ask, would one defend against a charge that he had been a member of a marijuana conspiracy from January, 2003, to December 1, 2003, than by contending that he was *not* a member of a marijuana conspiracy from January, 2003, to December 1, 2003? Milo began cooperating with the government in December, 2003, ten months before the return of the first superceding indictment which for the first time named Giglio as a defendant and twenty months before the return of the third superceding indictment, so any information regarding the alleged scope of the conspiracy which Milo could provide had long been either known by, or readily available to, the government. *See* Gvt. Opp. at 3-4. Indeed, the

---

[1] Giglio has offered, and renews that offer, to provide the Court *ex parte* with a more detailed explanation of his defense strategy with respect to the first superceding indictment and of how that strategy would require major revamping were he required to defend against the substantially expanded conspiracy charge in the third superceding indictment.

government admitted in its opposition to Giglio's motion *in limine* that it simply had not focused on Giglio until he filed his motion *in limine*. *See* Gvt. Opp. at 4 n.3. The government also knew, or certainly should have known, well prior to the time it sought the return of the third superceding indictment, that Giglio would object to the introduction of conversations which took place outside the time frame of the conspiracy charged in the first superceding indictment or which were not admissions of, or otherwise relevant to, his guilt of the conspiracy charged in the first superceding indictment. Were the third superceding indictment in the public interest, then the government's delay was inexcusable. The effect on Giglio of the last-minute expansion in the charges against which he must defend, in conjunction with the eve-of-trial timing of the third superceding indictment and the government's disregard of the Court's trial calendar, are all factors which justify the Court's exercise of its discretion to require the government to proceed to trial on the first superceding indictment.

The prosecution's motivation for the return of the third superceding indictment was manifestly *contrary* to the public interest in the fair administration of criminal justice, which itself would justify this Court's refusal to dismiss the first superceding indictment. The government's eve-of-trial quadrupling of the duration of the conspiracy charged for, as AUSA Levitt has admitted, purely tactical reasons, is unrelated to the public interest in the prosecution of Giglio, which, to the extent that it exists, is entirely served by the charges in the first superceding indictment. Giglio is no more culpable today than he was in October, 2004, when the first superceding indictment was returned, nor is he any more deserving of criminal punishment now than he was then. The government obtained the third superceding indictment immediately prior to this long-scheduled trial to seek to gain a tactical advantage over Giglio by confounding his defense efforts at the last minute,

to his very substantial prejudice. Such conduct on the part of the government is antithetical to any concept of the fair administration of criminal justice.

But what occurred here was not simply tactical maneuvering. Here, the return of the third superceding indictment was a manifest violation of Giglio's rights under the Due Process Clause of the Fifth Amendment to be free from vindictive prosecution. Prosecutorial vindictiveness occurs "when the government acts against a defendant in response to the defendant's prior exercise of [legal] rights." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C.Cir. 1987)(dismissing indictments where government added a second charge against defendants who did not plead guilty but instead insisted on their right to trial), *cert. denied*, 485 U.S. 940 (1988). "A vindictive prosecution, if proved, violates a defendant's Fifth Amendment right to due process." *United States v. Lanoue*, 137 F.3d 656, 664 (1st Cir. 1998). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). *See United States v. Goodwin*, 457 U.S. 368, 372 (1982)(individual "certainly may not be punished for exercising a protected statutory or constitutional right").

"Prosecutorial vindictiveness may be established in two ways: (1) by producing evidence of actual vindictiveness sufficient to show a due process violation; or (2) by showing that there is sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *United States v. Cafiero*, 292 F.Supp.2d 242, 247 (D.Mass. 2003). "It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness, or even if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption." *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997), *cert. denied*, 522 U.S. 1139 (1998). *See, e.g.,*

*United States v. Marrapese*, 826 F.2d 145, 147 (1st Cir.), *cert. denied*, 484 U.S. 944 (1987). "Actual vindictiveness must play no part in a prosecution or sentencing decision and 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of [his rights],' the appearance of vindictiveness must also be avoided." *United States v. King*, 126 F.3d 394, 397 (2d Cir. 1997), *cert. denied*, 523 U.S. 1024 (1998), *quoting North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). *See Blackledge v. Perry*, 417 U.S. 21, 28 (1974)("A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration"). "This need to avoid the appearance of vindictiveness has taken the form of a presumption of prosecutorial vindictiveness, . . . applied when (and only when) the circumstances of a case pose a realistic likelihood of such vindictiveness." *King*, 126 F.3d at 397. *See Goodwin*, 457 U.S. at 373.

Where, as here, a presumption of vindictiveness is warranted, "the prosecution bears the burden of rebutting the presumption by showing objective reasons for the additional charge that were not present when the original charge was brought." *Marrapese*, 826 F.2d at 147. *See, e.g., Lanoue*, 137 F.3d at 664 ("burden shifts to the government to show that legitimate reasons exist for the prosecution"); *Cafiero*, 292 F.Supp.2d at 247 ("the government bears the burden of rebutting the presumption by offering objective evidence justifying the prosecutor's action"). *See also United States v. La Porta*, 46 F.3d 152, 161 (2d Cir. 1994)(prosecutor admitted that he broadened conspiracy charge to evade district court's severance order; Court stated that "we might have a different case" had that been the only reason for the superceding indictment); *United States v. Amberslie*, 312 F.Supp.2d 570, 571 (S.D.N.Y. 2004)(finding rebuttable presumption of vindictiveness where, prior to trial, the district court excluded evidence of prior narcotics deals under

13

Rule 404(b), the first trial ended in a hung jury, and the government then obtained a superceding indictment broad enough to encompass the previously excluded deals). If the government fails to present such evidence, "the presumption stands and the court must find that the prosecution acted vindictively." *Meyer*, 810 F.2d at 1245.

Here, at a minimum, the facts suffice to support a presumption of vindictiveness. As is clear from the government's response to Giglio's motion *in limine*, the government had no intention to seek a superceding indictment against Giglio before he exercised his legal right to file a motion *in limine* seeking to exclude evidence from the trial of his case. Even more to the point, it is abundantly clear from that response and from the government's statements at the September 2, 2005, status hearing, that the sole impetus for the third superceding indictment was the filing of Giglio's motion *in limine*. *See* Gvt. Opp. at 2-4. A charging decision "lev[ies] an improper 'penalty' [if] it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 U.S. at 380 n.11. Here, Giglio had a "protected legal right" to move to exclude irrelevant and unfairly prejudicial evidence from the trial of his case. *See Lanoue*, 137 F.3d at 664 ("Successful assertions of vindictive prosecution are most common where a defendant advances some procedural or constitutional right and is then punished for doing so"); *cf. United States v. Johnson*, 221 F.3d 83, 96 (2d Cir. 2000)(exercising supervisory powers to refuse to consider government's cross-appeal because it could not "cleanse this record of the appearance of a radical and belated change in the government's position as to grouping as a result of vigorous defense efforts to minimize the sentence that appeared to be on the verge of success"), *cert. denied*, 533 U.S. 953 (2001).

The government's obtaining the third superceding indictment was direct retaliation for Giglio's exercise of his legal rights, and there is no societal interest which will be served by trying

14

Giglio on the third, as opposed to the first, superceding indictment. In addition to the timing of the third superceding indictment, coming as it did on the heels of Giglio's motion, and the government's written and oral statements indicative of a retaliatory motivation, is the glaring fact that at no time prior to the third superceding indictment did the government seek forfeiture against Giglio. That fact alone speaks volumes regarding the government's constitutionally impermissible retaliatory motivation for the third superceding indictment.

Moreover, the First Circuit has indicated that a relevant consideration is the government's incentive to prevent the defendant from asserting the right in question. *See Marrapese*, 826 F.2d at 149. Here, the government had a strong incentive to hinder Giglio's assertion of his right to exclude evidence, an inevitable corollary of which would be a broader chilling effect on defendants' exercise of their rights to exclude evidence not properly admissible under Rules 404(b)/403, if, by filing such a motion, they risk expansion of the charges against them to incorporate the time frame of the prior or subsequent acts. This is a particularly disquieting prospect, as the government generally does not notify the defendant of the evidence which it will seek to introduce under Rule 404(b) until relatively shortly before trial, and motions *in limine* are characteristically filed fairly close to the time of trial. If the government is permitted to proceed as it has done thus far in this case, then the inevitable result will be that defendants will be faced with an untenable choice: to seek the exclusion of such evidence, at the risk of finding themselves faced with a superceding indictment broadening the charges against them on which they may be forced to go to trial with little or no additional preparation time or to refrain from moving to exclude the evidence in the hope of ensuring that the case goes to trial on the existing indictment, a trial, however, at which irrelevant or highly and

unfairly prejudicial evidence will be admitted against them.[2] This is precisely the sort of "upping the ante" for the exercise of a legal right against which the prohibition of vindictive prosecution was designed to protect. *See Perry*, 417 U.S. at 28.

If any indictment should be dismissed here, it is the third, and not the first, superceding indictment. Giglio has "point[ed] to specific facts that raise a likelihood of vindictiveness," *Lanoue*, 137 F.3d at 664, and this Court should, therefore, hold an evidentiary hearing on the issue. Even if the Court ultimately determines that the third superceding indictment should not be dismissed for prosecutorial vindictiveness, the government's conduct in this matter provides an additional basis for refusing to dismiss the first superceding indictment under Rule 48(a) and for requiring the government to proceed to trial on the first superceding indictment.[3] "The disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal." *Smith*, 55 F.3d at 159. *See, e.g., Garcia-Valenzuela*, 232 F.3d at 1008 (prosecutor's good faith is of "fundamental importance" to the decision whether to grant Rule 48(a) dismissal); *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981)("the trial judge must look to the motivation of the prosecutor at the time of the motion to dismiss"). The government's belated bringing of the third superceding indictment, with all the concomitant prejudice to Giglio's ability to defend himself against the charge against him and

---

[2] Such an untenable choice would also adversely affect the functioning of the criminal justice system, as defendants may opt, unless a rule or court order requires the filing of motions to exclude evidence prior to trial, to hold such motions in abeyance until trial and object to the evidence only as it is offered, a course with obvious potential to disrupt the orderly course of criminal proceedings.

[3] Even though the Court has indicated its intention to reschedule the trial whether the case is tried on the first superceding indictment or the third superceding indictment, the Court still has the discretion to require the government to proceed to trial on the first superceding indictment. Should the Court determine that the case will be tried on the third superceding indictment, Giglio will need considerable additional time for preparation of his defenses.

disruption of the Court's long-fixed schedule, the lack of any societal interest to justify the return of the third superceding indictment, and the government's purely tactical motivation for the third superceding indictment, even if not vindictive in its legal term-of-art sense, all combine to produce circumstances in which the dismissal of the first superceding indictment would be manifestly contrary to the public interest in the fair administration of justice. The Court should decline to dismiss the first superceding indictment and order the government to proceed to trial on that indictment.

## CONCLUSION

For all the foregoing reasons, this Court should decline to dismiss the first superceding indictment and dismiss the third superceding indictment on the ground of vindictive prosecution. Alternatively, if the third superceding indictment is not dismissed for vindictive prosecution, the Court should exercise its discretion to require the government to proceed to trial on the first superceding indictment.

        Respectfully Submitted,
        By His Attorneys,

        */s/ Martin G. Weinberg*
        Martin G. Weinberg
        Mass. Bar No. 519480
        OTERI, WEINBERG & LAWSON
        20 Park Plaza, Suite 905
        Boston, Massachusetts 02116
        (617) 227-3700

        */s/ Robert Goldstein*
        Robert Goldstein
        Mass. Bar No. 630584
        20 Park Plaza, Suite 903
        Boston, Massachusetts 02116
        (617) 742-9015

September 14, 2005