UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 03-10370-DPW |
| v. | ) | |
| | ) | |
| FRANK GIGLIO, | ) | |
| Defendant. | ) | |

**OPPOSITION OF THE UNITED STATES TO DEFENDANT'S
MOTION TO DISMISS THE THIRD SUPERSEDING INDICTMENT**

The United States of America, by its attorneys, United
States Attorney Michael J. Sullivan, and Assistant U. S.
Attorneys Rachel E. Hershfang and Peter K. Levitt, hereby files
this memorandum in opposition to the motion of Frank Giglio (the
"defendant" or "Giglio") to dismiss the third superseding
indictment or, alternatively, to order the government to proceed
to trial on the first superseding indictment.

The defendant asserts two alternative grounds for its
motion. First, the defendant contends that the third superseding
indictment was the result of "prosecutorial vindictiveness."
Deft's Motion at 6. Specifically, the defendant argues that the
third superseding indictment "was returned in retaliation against
Giglio for exercising his legal right to seek the exclusion of
evidence against him at trial, in violation of the Due Process
Clause of the Fifth Amendment and should, therefore, be
dismissed." Id. at 3. Second, the defendant argues that, based
upon the "government's delay until virtually the eve of a long

1

scheduled trial and the severe prejudice to Giglio in the
preparation of his defenses," the Court should exercise its
authority to order the government to proceed to trial on the
first superseding indictment.  For the reasons presented below,
this Court should deny the defendant's motion in its entirety.

I.   __BACKGROUND__

In December 2003, a grand jury returned an indictment
against eight defendants charging them with, *inter alia*,
conspiracy to possess with intent to distribute 100 kilograms or
more of marijuana.[1]  The indictment, which alleged that the
conspiracy took place between in or about January and December
2003, was based largely on a Drug Enforcement Administration
("DEA") wiretap, in 2003, of the telephone of Douglas Bannerman,
a central figure in the alleged conspiracy (the "Bannerman
Conspiracy").  Giglio was not named in the 2003 indictment.

On September 15, 2004, a cooperating witness working with
the DEA ("CW-6") and Giglio, met at the Hardcover Restaurant in
Danvers, MA, and had a lengthy, consensually recorded
conversation in which they reminisced about their prior marijuana
trafficking relationship -- with each other, Bannerman, and Karl
Brown ("Brown") -- and discussed re-establishing that
relationship (the "September 15 Meeting").  In October 2004, a

---

[1] The case was originally charged by complaint in November
2003.

grand jury returned a superseding indictment (the "first superseding indictment") re-alleging, *inter alia*, the 2003 marijuana conspiracy, but for the first time, based on the investigation of Giglio, including the September 15 Meeting, adding Giglio as a defendant.

On August 30, 2005, two weeks before the scheduled trial of this case, the defendant filed a motion *in limine*, pursuant to FRE 404(b) & 403, to exclude Giglio's references during the September 15 Meeting to (i) his prior marijuana trafficking with CW-6 and Bannerman, (ii) his own marijuana trafficking activities in 2004, and (iii) his plans to engage in future marijuana trafficking with CW-6 ("Deft's Motion *In Limine*").

With respect to his prior marijuana trafficking with CW-6 and Bannerman, the defendant noted that the government had charged him "with membership in a finite, closed-ended conspiracy" beginning in January 2003 and ending on December 1, 2003, and argued that "[n]othing in Giglio's statements [at the September 15 Meeting] particularizes them to the 2003 time frame charged in the conspiracy." Deft's Motion *In Limine* at 3 n. 1. Rather, the defendant argued:

> If anything, in fact, they are *more* consistent with references to 2000-2001. Bannerman was arrested in California in August, 2000. CW-6 has told the government that, after his arrest, Bannerman asked CW-6 to supply his customers--one of whom CW-6 says was Giglio--with marijuana and that CW-6 supplied Giglio

with marijuana in 2000-2001[2] while Bannerman was on
home detention.  Giglio's references to events which
occurred during the time frame when Bannerman was in
"trouble"--troubles which Giglio says at one point
began four years earlier, at the time of the Democratic
National Convention in Los Angeles -- are consistent
with the topic of discussion being events in 2000-2001,
two years or more prior to the alleged commencement
date of the conspiracy charged, January, 2003.

Id. (emphasis in original).

Based on this distinction, Giglio indicated that he would
not be disputing at trial that he was involved in a marijuana
conspiracy with CW-6 and Bannerman in the early 2000s, but that
his defense would focus on whether the government could prove
beyond a reasonable doubt that he remained a member of that
conspiracy in 2003.  Thus, the defendant stated:

Unlike such cases, while Giglio will contend at trial
that he was not a member of the conspiracy charged, he
will *not* contend that acts testified to by the
witnesses were innocently done or otherwise argue that
he acted without the intent or knowledge required to
make him criminally culpable for the acts regarding
which he anticipates that the government's witnesses
will testify.  *The issue at trial will be whether the
government can prove beyond a reasonable doubt that
Giglio was a member of the conspiracy which the
government has chosen to define as spanning the time
frame between two discrete events, from January, 2003,
to December 1, 2003.*

Id. at 7 (second emphasis added).

---

[2] CW-6 has told the government that he continued to supply
Bannerman (through Giglio) with marijuana into 2002, took a
hiatus for about six months in 2002 because he was unable to
obtain sufficient marijuana to supply Bannerman, and then resumed
supplying Bannerman (through Giglio) toward the end of 2002 and
throughout 2003.

At the time it received the defendant's motion *in limine*, the government was, for the first time, focusing on trying Giglio alone.[3]  In this respect, in early September 2005, the government de-briefed CW-6 and (for the first time) Brown.  Based on the defendant's indication that he did not plan on disputing that he was involved in the marijuana conspiracy, the debriefings of CW-6 and Brown, the newly streamlined case, and the tape of the September 15 Meeting, the government reassessed the charges in the case against Giglio, as compared to the anticipated evidence. The evidence, as apparent both from the tape of the September 15 Meeting, and from the anticipated testimony of CW-6 and Brown, was that the conspiracy began in or about August 2000 (after Bannerman's arrest in California) and continued throughout 2003.

On September 2, 2005, three days after Giglio filed his Motion *in Limine*, counsel for the government advised defense counsel and the Court that it planned on superseding the indictment to extend the conspiracy period back to 2000.  On September 8, 2005, the grand jury returned the third superseding indictment in this case.  The only change to the indictment was that the start date of the conspiracy was moved back from January

---

[3] As the Court is aware, during the weeks leading up to the end of August 2005, the other defendants had been entering into guilty pleas at a steady pace.  The final two, other than Giglio, had agreed in principal to negotiated resolutions of their cases, but no plea agreements had been signed.  Those two ultimately pled guilty as well.

2003 to August 2000.[4]

## II.  **VINDICTIVE PROSECUTION**

The decision to supersede in this case was not based on a malicious or vindictive motive.  To the contrary, it was based on the desire to strengthen the government's case by more closely correlating the duration of the conspiracy with the anticipated evidence.  The defendant's motion to dismiss should therefore be denied.

A prosecutor's use of the charging process may potentially violate due process if it penalizes the exercise of constitutional or statutory rights.  See United States. v. Stokes, 124 F.3d 39, 45 (1st Cir.1997).  To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus.  United States v. Goodwin, 457 U.S. 368, 380 n.12 (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion"); United States v.

---

[4] In his motion, the defendant contends that the third superseding indictment "for the first time" added a criminal forfeiture allegation, pursuant to 21 U.S.C. § 853, against Giglio.  Deft's Motion at 3.  This is incorrect.  The first superseding indictment, returned in October 2004, before Giglio's arrest, contained a criminal forfeiture allegation, pursuant to 21 U.S.C. § 853, against Giglio.  See First Superseding Indictment at 8.

Sanders, 211 F.3d 711, 717 (2d Cir.2000).  See also United States
v. Wilson, 262 F.3d 305, 314 (4th Cir.2001).  In this respect,
the federal courts generally apply a presumption that prosecutors
act in good faith and do not prosecute for vindictive or
discriminatory reasons.  See United States v. Peterson, 233 F.3d
101, 105 (1st Cir.2000) ("We presume that the prosecutor acted in
good faith, and did not prosecute in a vindictive manner.")
(citing United States v. Bassford, 812 F.2d 16, 19 (1st
Cir.1987).  See also United States v. Graham, 146 F.3d 6, 9 (1st
Cir.1998).

There are essentially two ways to make a case of
prosecutorial vindictiveness.  First, the presumption of good
faith can be overcome if the defendant shows "actual
vindictiveness."  See, e.g., Willhauck v. Halpin, 953 F.2d 689,
711 (1st Cir.1991) (suggesting a definition of "actual
vindictiveness" as a "vindictive purpose motivating the
prosecutors").  The second way in which prosecutorial
vindictiveness cases have arisen is where, although there was no
showing of "actual vindictiveness," the circumstances suggested
such a "realistic likelihood of vindictiveness," that courts have
applied a rebuttable presumption of vindictiveness.  See
Blackledge v. Perry, 417 U.S. 21, 28-29 (1974).  See also Stokes,
124 F.3d at 45 ("It is hornbook law that a federal court may
dismiss an indictment if the accused produces evidence of actual

prosecutorial vindictiveness sufficient to establish a due process violation, or even if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption.").[5]

A case of actual vindictiveness requires direct evidence that the prosecutor's motive in making a charging decision was to punish a defendant for the exercise of a statutory or constitutional right.  See United States v. Johnson, 221 F.3d 83, 94 (2d Cir.2000) ("A finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'") (quoting United States v. Goodwin, 457 U.S. 368, 380-81 (1982)).  This is an exceedingly rare and difficult standard for a defendant to meet.  See United States v. Gary, 291 F.3d 30, 34 (D.C. Cir.2002) (actual vindictiveness claim is "exceedingly difficult" to make because it requires objective evidence that prosecutor's actions were designed to punish defendant for asserting legal rights). See also Willhauck, 953 F.2d at 711 (no proof of actual vindictiveness when prosecutors in two counties both brought charges against defendant resulting from car chase); United

---

[5] A presumption of vindictiveness can be overcome by objective evidence that the decision to prosecute was properly motivated.  See, e.g., United States v. Marrapese, 826 F.2d 145, 149-50 (1st Cir.1987) (prosecutor's explanation of changed circumstances sufficiently objective to overcome presumption); United States v. King, 126 F.3d 394, 399-400 (2d Cir.1997) (presumption of vindictiveness rebutted because government strategized and sought to increase likelihood that at least one of the defendants would be convicted).

States v. Brown, 217 F.3d 247, 257 (5th Cir.2000) (defendant failed to show genuine prosecutorial animus when federal authorities investigated him in alleged retaliation for lawsuit filed against local police); United States v. Wade, 266 F.3d 574, 585 (6th Cir. 2001) (no actual vindictiveness because prosecutor increasing charges had no personal stake, and defendant committed additional crime after initial indictment issued); United States v. Spears, 159 F.3d 1081, 1087 (7th Cir.1998) (no proof of actual vindictiveness on part of federal prosecutor even if state prosecutor threatened to "get" defendant at any cost).

The defendant in this case cannot show "actual vindictiveness" and has not attempted to do so in his motion. That is, the defendant has not attempted to provide direct evidence that the prosecutors' decision to supersede in this case was motivated by some animus toward the defendant.

Nor is this a case in which the circumstances suggest that a "realistic likelihood of vindictiveness" exists, such that a rebuttable presumption of vindictiveness is warranted. The federal courts have consistently held that, to the extent that the presumption of vindictiveness is even available in the pretrial context, it should only rarely be applied. See, e.g., United v. Stokes, 124 F.3d 39, 45 (1st Cir.1997) ("courts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings"); United States v. Koh,

9

199 F.3d 632, 639-40 (2d Cir.1999) (presumption of vindictiveness does not arise in pretrial setting or in shift from state to federal jurisdiction); United States v. Wilson, 262 F.3d 305, 315 (4th Cir.2001) (presumption of vindictiveness rarely applied to pre-trial prosecutorial decisions); United States v. Spears, 159 F.3d 1081, 1086 (7th Cir. 1998) (in the pretrial context, defendant "must present objective evidence showing genuine prosecutorial vindictiveness").[6]

The reasons for this stem from concepts of prosecutorial discretion and separation of powers, and concomitant recognition by the courts that charging decisions are the province of the executive branch, subject to constitutional restraints. See United States v. Armstrong, 517 U.S. 456, 464 (1996)(separation of powers requires broad prosecutorial discretion); Wayte v. United States, 470 U.S. 598, 607-08 (1985) ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are

_____

[6] When the federal courts have applied the presumption of vindictiveness, it has been in the context of a defendant being reindicted, particularly when a prosecutor has increased the number or severity of charges after the defendant has appealed his conviction. See, e.g., Blackledge v. Perry, 417 U.S. 21, 28-29 (1974) (Due Process Clause prohibits a prosecutor from brining a more serious charge against a defendant who has pursued a statutory right of appeal from a conviction on a lesser charge for the same offense).

competent to undertake."); <u>Carranza v. INS</u>, 277 F.3d 65, 72 (1st
Cir.2002)(noting a general proscription against judicial review
of any aspect of prosecutorial deliberations); <u>United States v.
Flemmi</u>, 225 F.3d 78, 86 (1st. Cir.2000).

The Supreme Court's decision in <u>United States v. Goodwin</u>,
457 U.S. 368 (1982), is particularly instructive.  In <u>Goodwin</u>,
the Court found no presumption of vindictiveness when additional
charges were filed after the defendant requested a jury trial.
<u>Goodwin</u>, 457 U.S. at 384.  The <u>Goodwin</u> Court distinguished such
decisions made in the pretrial setting from charging decisions
made after a trial has begun or a conviction has been obtained:

> There is good reason to be cautious before adopting
> an inflexible presumption of prosecutorial
> vindictiveness in a pretrial setting.  In the course of
> preparing a case for trial, the prosecutor may uncover
> additional information that suggests a basis for
> further prosecution or he simply may come to realize
> that information possessed by the State has a broader
> significance.  At this stage of the proceedings, the
> prosecutor's assessment of the proper extent of
> prosecution may not have crystallized.  In contrast,
> once a trial begins--and certainly by the time a
> conviction has been obtained--it is much more likely
> that the State has discovered and assessed all of the
> information against an accused and has made a
> determination, on the basis of that information, of the
> extent to which he should be prosecuted.  Thus, a
> change in the charging decision made after an initial
> trial is completed is much more likely to be improperly
> motivated than is a pretrial decision.

<u>Id.</u> at 381.

The <u>Goodwin</u> Court then addressed the kind of motion at issue
in this case (i.e., a motion *in limine* to exclude evidence).

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor.  Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury.  It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.  The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted.  A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct.  As we made clear in <u>Bordenkircher</u>, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

<u>Id.</u>  <u>Cf.</u> <u>United States v. Branham</u>, 97 F.3d 835, 849-50 (6th Cir.1996) (defendant failed to establish prosecutorial vindictiveness when prosecutor filed superseding indictment, adding conspiracy count, after defendant filed motion to dismiss drug indictment, because prosecutor's assessment of the "proper extent of prosecution" may not have been finalized at that point).[7]

---

[7] In a footnote, the <u>Goodwin</u> Court made the following observation:

We recognize that prosecutors may be trained to bring all legitimate charges against an individual at the outset.  Certainly, a prosecutor should not file any charge until he has investigated fully all of the circumstances surrounding a case.  To presume that every case is complete at the time an initial charge is

Against this backdrop, it is difficult to discern how the defendant could make a case for a presumption of vindictiveness. The decision to supersede in this case was made in the pretrial context.  If it could arguably be viewed as a response to anything in the case it would be to the defendant's motion *in limine*.  This is precisely the type of pretrial motion that Goodwin advises it would be unrealistic from which to presume a response's vindictiveness.  Goodwin, 457 U.S. 368 ("It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.").[8]

While the timing in this case was regrettable, it did not stem from any maliciousness or vindictiveness on the part of the prosecutors.  While the prosecutors may have proved themselves

_____

filed, however, is to presume that every prosecutor is infallible--an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.  Moreover, there are certain advantages in avoiding a rule that would compel prosecutors to attempt to place every conceivable charge against an individual on the public record from the outset.

Id. at 382 n.14.

[8] As the government has stated herein, the decision to supersede was not based solely on the motion *in limine*, but, rather, was a response to what that motion revealed about the government's case (i.e., that it would be stronger if the conspiracy alleged went back to August 2000), combined with the recent debriefings of two government witnesses, all of which persuaded the government that it should revise the alleged conspiracy to make it more consistent with the anticipated evidence at trial.

13

fallible in their original charging decision, or in not superseding earlier, there is no evidence whatsoever that they were motivated by any animus, ill will, or vindictiveness toward the defendant.  Cf. id. at 382 n.14 ("To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible--an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.").

For the foregoing reasons, the defendant's motion to dismiss the third superseding indictment for prosecutorial vindictiveness should be denied.

III.  **THE DEFENDANT'S REQUEST TO PROCEED TO TRIAL ON THE FIRST SUPERSEDING INDICTMENT**

In the alternative, the defendant requests that the Court order the government to proceed to trial on the first superseding indictment rather than the third superseding indictment.  In support of this request, the defendant cites the "severe prejudice to Giglio in the preparation of his defenses." Deft's Motion at 3.

As a general matter, when a superseding indictment is returned, both indictments remain in place, unless one of them is dismissed, and "the government may select one of them with which to proceed to trial." United States v. Bowen, 946 F.2d 734 (10th Cir.1991) (quoting United States v. Stricklin, 591 F.2d 1112, 1115-1116 n.1 (5th Cir.1979)).  See also United States v.

14

Cerilli, 558 F.2d 967, 700 n.3 (3rd Cir.1977).[9]  When a
superseding indictment is returned on the eve of trial, and
materially and substantially changes the nature of the charges
against the defendant, the normal course is for the trial court
to grant the defendant a continuance to allow the defendant
adequate time to prepare for trial.  See, e.g., United States v.
Barnes, 251 F.3d 251, 258 (1st Cir.2001) ("Given the substantial
nature of the change conveyed by the superseding indictment in
this case, it seems entirely appropriate to allow all parties
extra time to prepare adequately for trial.").

      The only exception to this practice that the government has
found is one case where the defendant wanted to go to trial
immediately on the prior indictment and the trial court
determined that the defendant would be prejudiced by the lengthy
delay necessitated by the superseding indictment.  In United
States v. Kouri-Perez, 47 F.Supp.2d 166 (D.P.R.1999), a
complicated white collar, health care fraud case, the alleged
conspiracy concerned a money laundering and corrupt solicitation
scheme involving the improper use of federal funding appropriated
for the treatment of AIDS victims.  A few weeks before trial, the
government obtained a third superseding indictment adding two new

---

      [9] See also Bowen, 946 F.2d at 736 ("We have found no
authority which supports the proposition that a superseding
indictment zaps an earlier indictment to the end that the earlier
indictment somehow vanishes into thin air.").

defendants and twenty-one months of life to the conspiracy at its
inception.  Kouri-Perez, 47 F.Supp.2d at 170.  In addition, just
two days prior to obtaining the superseding indictment, the
government turned over volumes of new evidence to the defendants,
including, inter alia, seven years' worth of checks, vouchers and
invoices to a law firm; five separate articles of incorporation
for corporations which one of the defendants was allegedly
involved; and numerous other checks and vouchers.  Id. at 169
n.1.

The district court concluded that the "indefinite
continuance" which would be necessitated by a trial on the third
superseding indictment "is not an option in this protracted
criminal case."  Id. at 169 n.3 ("As [s]ociety cannot be placed
in a position where it is unable to bring to trial the violators
of its laws, we find that an indefinite continuance is simply not
available in this case.") (internal citation omitted).

This case is distinguishable from Kouri-Perez.  In Kouri-
Perez, the district court faced a situation in which, because of
the two new defendants, the extended duration of the conspiracy
period, and the volumes of new discovery entailed by the
superseding indictment, the case would essentially have to start
over from scratch -- hence the reference to an "indefinite
continuance."  (The addition of two new defendants alone would
presumably have had the same effect.)  On the other side of the

16

balance, the defendants wanted to go to trial immediately, and
not on the third superseding indictment.

This case is different both in kind and in degree.  There
are no new defendants, and there is no new discovery.
Furthermore, there was no defense request to preserve the long-
scheduled trial date.  Indeed, at the pretrial conference on
September 8, 2005, the Court asked defense counsel whether, if
the Court required the government to go to trial on the first
superseding indictment, the defendant would want to have that
trial in the next thirty days.  Defense counsel indicated that,
regardless of how the Court ruled on the pending indictments, he
would seek a lengthy continuance.  The Court then indicated that
the next available date was in February 2006, to which neither
Giglio nor the government objected.

Unlike the situation in Kouri-Perez, the defendant in this
case is not prejudiced by the amount of delay caused by the
return of the third superseding indictment.  Indeed, based on the
representations of counsel at the September 8, 2005 hearing, the
defendant welcomed the continuance.  There is therefore no
compelling reason for this Court to invoke the extraordinary
remedy of requiring the government to go to trial on a prior
indictment after a superseding indictment has been returned.

The nature of this case and of the expanded charges also
distinguishes it from Kouri-Perez.  Although defense counsel

makes much of the effect of the expanded conspiracy on his trial strategy, the essential nature of this case is unchanged. This fact is borne out by the lack of additional discovery based on the superseding indictment. The government's case is not materially different -- it still relies primarily on the testimony of two cooperating witnesses and the tape recording of the September 15 Meeting. While the ramifications of the charges in this case are significant, it is in essence a simple and straightforward case. This is a stark contrast to Kouri-Perez. Cf. United States v. v. Grossman, 843 F.2d 78 (2d Cir.1988) (noting that superseding indictment returned two days before trial, which included ten new counts involving new transactions and which expanded the time frame for the charges, "did not change substantially the nature of the government's case and caused no such prejudice to" the defendant).[10]

For the foregoing reasons, the defendant's motion for an order requiring the government to proceed to trial on the first superseding indictment should be denied.

---

[10] Some courts have held that, absent a showing of prejudice, a defendant is not automatically entitled to a continuance when an indictment is returned within 30 days of trial. See, e.g., United States v. Punelli, 892 F.3d 1364, 1369-70 (8th Cir.1990) (affirming rejection of defendant's motion for continuance where trial court forced him to go to trial within 30 days of return of superseding indictment, reasoning that, notwithstanding fact that superseding indictment extended conspiracy from December 1985 to June 1986, there was no evidence of prejudice in the record). In this case, the government was prepared to go to trial as scheduled.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  <u>/s PETER K. LEVITT              </u>
RACHEL E. HERSHFANG
PETER K. LEVITT
Assistant U.S. Attorneys

Dated: September 19, 2005